## Ogburn-Dalchau Lumber Company v. R. W. Taylor.

### Decided March 3, 1910.

**1.—Venue—Lien—Place of Performance.**

Transactions concerning a sale of lumber held not to show a lien by the seller on lumber sold which the purchaser refused to take nor a written contract by the purchaser to perform in the county. The purchaser being a resident of another county, his plea of privilege to be there sued should have been sustained.

**2.—Sale—Passing Title.**

A contract for sale of specific lumber in the hands of the seller to be shipped to the purchaser and be paid for by him in the future, is held to evidence a completed sale by which the lumber became the property of the purchaser.

**3.—Sale—Refusal to Receive and Pay—Election of Remedies.**

The seller of personal property, on the refusal of the buyer to receive same may elect between the remedies open to him: (1) Hold the property as the purchaser's and sue for the contract price (for which he would have a lien on the property); (2) sell it to another and recover the difference between the contract price and that obtained (by which his lien against the first purchaser would be lost); (3) keep the property as his own and recover the difference between the market and the contract price. But the buyer can not elect one alternative as to part of the property and another as the rest, and his sale of a part to a third person was a choice which waived his lien as to all, being an election as to all of the second remedy.

**4.—Sale to Another.**

The resale by the seller, of property which the buyer refused to accept was an election of his remedy by suit for the difference between the price promised and that realized on resale, though the second purchaser was to store the property subject to the first purchaser's demand to deliver on the first sale. It placed delivery to the first buyer out of the seller's power, and substituted for his own the liability of another to make delivery. Especially was the seller bound by such election where other property was mingled with that transferred by the resale.

**5.—Contract—Place of Performance.**

The owner of lumber in H. county by . contract in writing sold it to a

purchaser in D. county, to whom it was to be shipped for a named price f. o. b. cars, the place of payment not being designated. Held, that it was not a contract to be performed by the buyer in H. county, so as to give venue there in a suit to which he interposed his plea of privilege.

Appeal from the District Court of Harrison County. Tried below before Hon. W. C. Buford.

*Chilton & Chilton,* for appellants.—Defendant was entitled to a peremptory instruction in its favor on its plea of privilege. Russell v. Heitman, 86 S. W., 75; McLaughlin v. Shannon, 3 Texas Civ. App., 136; Cohen v. Munson, 59 Texas, 236; Holloway v. Blum, 60 Texas, 625; Keppert v. Aultman, 25 Texas Civ. App., 495; Bewley v. Schultz, 115 S. W., 294; Borden v. Le Tulle Co., 32 Texas Civ. App., 477; Mahon v. Cotton, 13 Texas Civ. App., 239; Keller v. State, 87 S. W., 669; Chamberlain v. Fox, 54 S. W., 297; Keeler v. Paulus, 43 Texas Civ. App., 555.

Plaintiff elected to realize on the lumber when he began to sell it to the Harrison County Lumber Company. Waples v. Overaker, 77 Texas, 7; Lewis v. Steiner, 84 Texas, 364; Carver v. Graves, 47 Texas Civ. App., 481; Sour Lake T. Co. v. Deutser & Co., 39 Texas Civ. App., 86;; Parlin & Orendorff Co. v. Harrell, 8 Texas Civ. App., 368.

*S. P. Jones,* for appellee.—This was a contract in writing promising performance in Harrison County, Texas, and the venue was properly laid in Harrison County, Texas. This was also a suit to foreclose a lien upon property situated in Harrison County, Texas, at the time suit was instituted and at the time jurisdiction of the court attached. Rev. Stats., art. 1194, secs. 5, 12; Darragh v. O'Connor, 69 S. W., 646; Yett v. Green, 39 Texas Civ. App., 184; Bell County Brick Co. v. Cox & Co., 33 Texas Civ. App., 292; Callender v. Short, 34 Texas Civ. App., 364; Hilliard v. White. 31 S. W., 553; Higgins v. Frederick, 32 Texas, 283.

HODGES, ASSOCIATE JUSTICE.—This is an action to recover the contract price of certain lumber alleged to have been sold by the appellee to the appellants, and, in the alternative, damages for a breach of a contract to purchase lumber. The appellee was the owner of a lot of lumber situated at and near Harleton, in Harrison County. The appellants were a partnership doing business under the firm name of the Ogburn-Dalchau Lumber Company.

The petition contains two counts. In the first it was alleged that the appellee was the owner of a mill cut of lumber amounting to 1,136,730 feet, giving the number of pieces and dimensions, situated at Harleton, in Harrison County; that on the 25th day of March, 1907, the appellants purchased this lumber from the appellee and agreed to pay therefor $17,005, or $15 per thousand feet. A portion of the contract of purchase was embodied in the following written instrument: "March 25, 1907. We have this day sold to the Ogburn-Dalchau Lbr. Co. the following lumber: (Then follows description of the lumber, giving the number of feet and dimensions, together with

the price, and in some instances the number of pieces of a particular kind. The description is divided into groups designated as 'orders,' making in all fifteen distinct and separate orders.) Lumber is sold f. o. b. cars at Harleton, Texas, at the above prices; and I also agree to pay planer prices to the Ogburn Lbr. Co.

"S. & E., including 1 x 12 at.........$1.25 per M.
"S2S . . . ........................ 1.50  "    "
"Shiplap  S2S . ................... 1.75  "    "
"Shiplap  S1S . ................... 1.50  "    "
"1 x 4 & 1 x 6  D. & M. ........... 2.25  "    "

"I also agree to pay stopping charges of $5 a car at Marshall, so as to make these prices net to the Ogburn-Dalchau Lbr. Co., allowing the usual 2 percent discount for advance made on invoices, said lumber sold on the basis of grades and weights to the association of the Lumbermen's Association.  (Signed)

"R. W. Taylor,
"J. W. Ogburn Lbr. Co.,
"Per J. W. Ogburn, Prest."

It is alleged that the above written instrument was prepared by the appellants through J. W. Ogburn, one of their members; that Ogburn, acting for the appellants, on the same day purchased 80,155 feet of lumber in addition to the above at an average price of $13.83 1/3 per thousand. Both of said contracts were to be performed in Harrison County. It is further alleged that up to the 19th day of June, 1907, the appellee had delivered ........ feet of said lumber, leaving still on hand 597,490, giving the number of pieces and dimensions, amounting in the aggregate in value to $9,-417.52. It is averred that on June 19, 1907, the appellants stopped further shipments, and that since that time they have declined to receive and pay for any more of said lumber; that all of the undelivered lumber was then situated in Harrison County, and was so located when sold; that the appellants are the owners of the lumber charged with the purchase price, and that appellee has nothing further to do with it except to load it on the cars and ship it to them, all of which he has attempted in good faith to do; that by reason of the refusal of the appellants to receive and pay for the remainder of the lumber they are indebted to him for the value thereof, to wit, $9,417.52. Appellee also alleges the existence of a seller's lien, and asks for its foreclosure. In the second count he pleads that if for any reason it should be held that the negotiations referred to between the appellants and the appellee did not amount to an absolute sale of the lumber to appellants, then there was a contract of sale for the amount before named at the prices stated; that the appellants had agreed to accept and receive the lumber when it should be loaded and shipped within a reasonable time; that the appellee had fully performed his part of the contract, but that the appellants had refused to receive and pay for more of the lumber, and he was thereby prevented from making the remainder of the shipments; that the market price had

declined to $8 per thousand feet less than the contract price, and appellee had been damaged in the sum of $4,000. He also alleges that the lumber was still in his possession, and asks for a foreclosure of his seller's lien.

The appellants filed a plea of privilege, claiming the right to be sued in Dallas County, the place of their residence. The plea contained the usual averments required by statute, and further denied specifically the facts relied upon in the petition as showing the existence of a lien, or that the portion of the contract in writing evidenced any obligation to be performed by them in Harrison County. Appellants further answered generally and specifically, but, inasmuch as the facts put in issue by the remainder of their answer are not material to be considered in the disposition we make of the case, it is unnecessary to further notice them.

The case was continued at different terms of the court, the plea of privilege being protected by appropriate orders. On June 10, 1909, the term at which the case was tried, the appellee filed what he styles his "first supplemental petition," in which he alleges, among other things, that since the institution of this suit, in order to protect the lumber and save it from waste and further depreciation in value, he had sold the larger portion of it for the best price obtainable. The amount sold is placed at 586,000 feet, for which he says he received a price of $4 per thousand less than the contract price he was to receive from appellants. He further claims that he incurred expenses in making these sales, for which he asks reimbursement.

The case was submitted to the jury on special issues, and upon the answers returned the court entered a judgment in favor of the appellee for $2,158.35. The appellants requested a peremptory instruction directing the jury to return a verdict in their favor upon their plea of privilege. This was refused by the court, and that ruling is made the basis of the assignments of error which we will now consider.

It is not denied that the appellants reside in Dallas County, and could not, over their objections, be sued in Harrison County unless by reason of some of the statutory exceptions to the general rule. The venue in Harrison County is sought to be sustained: (1) By subdivision 12 of article 1194 of the Revised Civil Statutes, which permits a suit for the foreclosure of a mortgage or a lien to be brought in the county in which the property subject to such lien, or portion thereof, may be situated; (2) by subdivision 5 of the same article, which provides that where a person has contracted in writing to perform an obligation in any particular county, suit may be brought either in such county or in the county where the defendant has his domicile.

Considering these exceptions in the above order, the first inquiry should be, does the evidence show this to be a suit for the foreclosure of a mortgage, or lien, on property situated in whole or in part in Harrison County? The venue of an action of the class to which this belongs is not to be determined solely by the averments of the pleader, but by the facts which the proof shows existed at the time suit was filed. Hilliard v. Wilson, 76 Texas, 180, 13 S. W., 125; Townes on Pleading, 362. It therefore becomes necessary to refer to the evidence

adduced upon the trial. If at the time this suit was instituted the appellee held the lien which he here asserts, then the jurisdiction of the court properly attached, and would not be divested by the subsequent loss or abandonment of the lien in changing the form of the action. The facts developed upon the trial, we think, justify the conclusion that the negotiations between Taylor and the appellants resulted in a completed sale of the lumber, and that there was a transfer of the title; that nothing remained for Taylor to do except to load and ship according to instructions given and to be given. The facts also show that on June 19, 1907, the time when it is alleged that appellants refused to accept further shipments, Taylor had all of the undelivered lumber in his possession. According to his testimony, the undelivered remnant then amounted to something in excess of 500,000 feet. Under such conditions, where the sale is a cash transaction, or where credit is given and the purchase price becomes due before delivery, the seller would have a lien subject to be foreclosed in a court of competent jurisdiction. 2 Mechem on Sales, secs. 1471-1474, 1521; 1 Jones on Liens, sec. 852. While the testimony in this case shows that the sale was not for cash, but that time was given within which to pay the purchase price after the delivery of the lumber at its final destination, it must be held that such credit was extended upon the condition that orders would be given and the shipments received within a reasonable time after the making of the original contract of sale, and that a repudiation of the contract by a refusal to receive and pay for more lumber authorized the appellee to demand immediate payment of the balance of the purchase price found to be due. In using the language here employed we do not wish to be understood as now determining that the contract had been broken by the appellants, but that we so regard it merely for the purpose of passing upon this plea of privilege in discussing the question of a lien *vel non*. No time having been specified in either the written or oral agreements, it must have been contemplated that shipments should be ordered out within a reasonable time, and payments made accordingly after the shipments reached destination and settlement was made with the final purchasers.

But proceeding upon the assumption that the appellants breached their contract by refusing to accept and pay for the remnant of lumber left on Taylor's hands on the 19th day of June, 1907, and that Taylor, under the terms and conditions of his contract, was entitled to then assert a seller's lien against this undelivered balance, it does not follow that this lien was preserved and held till the filing of this suit. The general rule as to remedies of the seller when the buyer refuses to receive and pay for the articles sold, where the possession and not the title remains in the seller, is thus stated by Mechem on Sales, vol. 2, sec. 1678: "(1) He may store or retain the property for the vendee and sue him for the entire purchase price; (2) he may sell the property, acting as the agent for this purpose for the vendee, and recover the difference between the contract price and the price obtained on such sale; or (3) he may keep the property as his own and recover the difference between the market price, at the time and place of delivery, and the contract price." This general rule seems

to have met with the approval of the Supreme Court of this State, as well as the courts of other jurisdictions. Waples v. Overaker, 77 Texas, 7, 13 S. W., 527. These remedies are not concurrent, but inconsistent. Westfall v. Peacock, 63 Barb. (N. Y.), 209; Dreyfuss v. Foster, 3 N. Y. Supp., 54. The inconsistency goes, at least, to the extent of forbidding the election by the seller of different remedies in dealing with different portions of the property forming the subject matter of the same contract. When the contingency arises—that is, when the contract is broken—the seller, having the choice of the remedies which the law gives him, is put to an election; and, having made one, and dealt with a portion of the property left in his possession in accordance with that remedy, he must pursue the same remedy as to all. His subsequent relations to the property will be determined by the remedy which he first chooses and undertakes to enforce. Of those mentioned above, the first involves a continued recognition of the title of the vendee in the undelivered goods, is a demand by the seller for the entire unpaid purchase price, and not a claim for damages for a refusal to perform the contract. The second and third are consistent only with claims for damages to be measured, not by the contract price alone, but by the difference between that price and the value of the undelivered goods, this value to be ascertained in one or the other of the methods which may be adopted. In one case the price realized at a resale, and in the other the market value of the goods, is selected as the amount with which to compare the contract price in arriving at the damages sustained. If the seller elects to treat the property as still belonging to the vendee, and seeks to recover the entire contract price, he must hold all the property in readiness to be delivered to the owner upon a demand accompanied by full payment of what is due. If he has placed any portion of the property beyond his power to so deliver he is not entitled to the contract price, for he has himself, in such an instance, departed from the terms of the contract, and is in no attitude to demand full performance by the vendee. He can not hold the latter liable for the full amount of the price for which the goods were sold and then deprive him of all or any portion of the goods. We will now undertake to apply these principles to the facts of this case.

According to the testimony of Taylor, on the 19th day of June, 1907, he received from the appellants instructions by letter not to ship any more of the lumber till further notice was given. During the remainder of that month, and also during July and August following, some other correspondence passed between him and the appellants with reference to past shipments, but no reference was made to the contract, nor was anything said indicating that appellants did not intend to take the remainder of the lumber purchased. About the 28th of August of the same year, with the consent of the appellants, Taylor sold four carloads of the lumber, aggregating about 80,000 feet, to another party. As he testified, this sale, when added to the amount of lumber delivered, made about 606,000 feet which had been delivered under the contract, leaving about 424,000 feet still undelivered. It was further shown by the testimony of Taylor that on the 28th day of August, 1907, he began selling the lumber which re-

mained of the lot previously sold to the appellants, in carload lots, to the Marshall County Lumber Company, a corporation of which he was manager, with its place of business at Marshall, in Harrison County. He stated that the sales were made with the understanding that the lumber company was to hold the lumber subject to the appellants' orders under their contract with Taylor, should they send in any. But he did not notify appellants of the sales made or of the terms. The lumber thus sold was stored separately by the lumber company in its yards, but how long it was held does not appear. The sales by Taylor to the Marshall County Lumber Company were continued at short intervals down to March 24, 1909, when, according to his testimony, the last of the lumber left on his hands by the appellants had been thus disposed of. He also testified that he mixed with the lumber above referred to 224,000 feet which he had acquired from other sources since his contract with the appellants. The written list, or memorandum, which appellee exhibited as evidence of the sales mentioned above, showed that before this suit was filed Taylor had sold to the Marshall County Lumber Company over 500,000 feet, a part of which was probably some of that subsequently acquired by him. Two months before the case was tried in the court below all of the lumber had been disposed of.

Taylor received no orders from the appellants after June 19, 1907. In January, 1908, or some time prior thereto, he placed his claim against the appellants in the hands of an attorney. On the 23d of January his attorney wrote to the appellants, calling their attention to the fact that there was still a portion of the lumber included in their original purchase that had not been received and paid for by them, and stating that this remainder was held subject to their order, and had been since the 19th of June preceding. Appellants were requested to make some satisfactory arrangement about the handling of this undelivered balence. He also suggested if appellants were not ready to have the remainder shipped that they pay Taylor for it, holding back a reasonable amount to cover the expense of loading and the planer charges; that Taylor would agree to load the lumber out at such times as they might desire it moved. The communication also intimated that, unless some satisfactiry arrangements were made, suit would be instituted to collect the balance claimed. Appellants replied to this on the following day, disclaiming any liability to Taylor for any balance on lumber, claiming that Taylor had failed to comply with the terms of the original agreement in that he had not exercised proper diligence in shipping the lumber out on the orders previously given, and refused to accept or pay for any more of the lumber. On the 11th day of May, 1908, this suit was filed.

All of the controlling facts upon which the issue of venue must rest do not appear to have been submitted in the questions propounded to the jury. But, inasmuch as the merit of the assignment here under consideration must be tested alone by the refusal of the court to give a peremptory instruction to return a verdict in favor of appellants upon that issue, such failure is of no importance, and the findings made by the jury upon the issues that were submitted are immaterial. The question before us is, had Taylor by his conduct waived

or lost the lien which he might have asserted in an action for a foreclosure had he elected the appropriate remedy? We think the evidence conclusively shows that he had. Assuming that the contract was broken by the appellants on the 19th day of June, 1907, or in August following, Taylor must be held to have made an election of his remedy when he began selling the undelivered balance of the lumber to the Marshall County Lumber Company on the 28th of the last mentioned month. The fact that in making the contract of sale with that company he imposed a condition that the lumber be held by it subject to the orders of the appellant, did not relieve him of the effects of having made a transfer of the property to another. In so doing he placed it beyond his power to deliver the lumber when he collects the purchase price by suit, or upon a voluntary tender of payment by the appellants before judgment. It is no answer to say that the lumber company had bound itself to deliver the lumber to him upon demand. That would be substituting the obligation of the lumber company for Taylor's own. This he had no right to do. He did have the right to resell the lumber remaining in his possession and thus reimburse himself as far as this could be done for the purchase price still due him. Such a resale would be wholly inconsistent with a sale reserving the right to the appellants to still secure the lumber under their original contract of purchase. If Taylor made a sale of the lumber as his own, that transaction amounted to a rescission of the contract and a resumption by him of the title, and there could thereafter be no lien subject to a judicial foreclosure. A man can not have a lien on that which he owns in fee. If Taylor had thereby elected the remedy of reselling, he then began asserting a right that did not depend upon or contemplate the judicial foreclosure of a lien. Where this remedy is resorted to by the seller he is not in a proper attitude to appeal to the courts until his resale is complete and he had thereby ascertained his full damages. Counsel for appellee contends that, notwithstanding a part of the lumber had been sold by Taylor before suit was filed, as long as any portion of it remained unsold that portion belonged to the appellants and was subject to Taylor's lien. This contention is, we think, unsound. In cases like the present, where the subject matter of the contract is divisible, such a policy would permit the seller to deal with a part of the property as his own and the remainder as that of the vendee. As before stated, upon a breach of the contract the seller has the right by an election to fix his relations to the property remaining in his possession, but this election must be toward the property as a whole. The seller can not be permitted to select portions which he may claim as his own and treat other portions as still belonging to his vendee, where all are the subject matter of the same contract. Such a rule would not only be an anomaly in civil jurisprudence, but would be productive of confusion in the enforcement of remedies, and would furnish tempting opportunities for sellers to impose upon defaulting purchasers. We think the principles we have announced are much the same as those which support the rule forbidding a party having the option to affirm or rescind a contract, upon breach by another, from affirming in part

and rescinding in part. Nass v. Chadwick, 70 Texas, 157, 7 S. W., 828. The right to resume title to the property remaining in his possession being still in Taylor, he could, upon a breach, through the exercise of his power of election of remedies, devest the appellants of any title which may have theretofore been transferred to them. Hence, when he elected to treat a portion of the lumber as his own, and so dispose of it, that determined his relations to all of it. We have therefore concluded that at the time he filed his suit Taylor had no lien on the property involved, and could not, for the purpose of a foreclosure, invoke the jurisdiction of the District Court of Harrison County.

It is further claimed, as before stated, that the venue can be sustained upon the ground that the appellant agreed in writing to the performance of an obligation in Harrison County. The specific obligation relied upon in the argument is that he was "to receive the lumber in Harrison County." We must look to the terms of the contract as evidenced in the written instrument for guidance in the determination of this question. It is immaterial whether the appellants agreed by some parol provisions of their contract to perform an obligation in Harrison County or not. Unless that obligation is implied or expressed in the written instrument it is unavailable for the purposes of supporting the venue in this instance. An "obligation," as we understand that term, in order to come within the provisions of the statute, must be a contractual agreement to perform some duty or service essential to confer or protect some right which the other party to the contract may claim. In other words, the obligation must be such that, if not performed, its breach would deprive the other party of some appreciable right, or occasion him some actionable damage. In no other sense could the statute be given an intelligent interpretation. Its purpose was to fix the venue of suits, and in using the word "obligation" it clearly contemplated only such obligations as might be made the basis of suits. The written contract in this case does not provide that the price of the lumber shall be paid in Harrison County. The undisputed parol evidence shows that it was not to be paid there. We may then ask, what damage resulted to Taylor by the failure of appellants to send in orders for the remainder of the lumber purchased by them? Under the facts, the delivery and acceptance of the lumber on board the cars was not essential to the perfection of the appellee's right to the purchase price. If we are correct in holding that the title had been transferred by the original contract of sale, the failure to accept only relieved the appellee of the performance of his duty to deliver. The refusal to pay the full contract price was the only material obligation broken. If it be held that the contract was only executory, and that title still remained in the seller, the measure of his damages was in no way affected by the refusal to accept the lumber. The very foundation of an action for damages for the breach of an executory contract is the loss of the benefit which the complaining party might have reaped had the contract been executed in full. We fail to see in the present case how the failure or refusal of the appellants to receive any more lumber affected the right of the appellee to recover the full purchase price, if the contract be regarded

as a completed sale, or full damages for a breach in case it is construed to be only an executory agreement. The writing itself is silent as to where the lumber is to be delivered. The testimony of both Taylor and one of the appellants is to the effect that the terms "f. o. b. cars," when used in such contracts, merely indicates that the purchaser is to pay the freight from the point mentioned.

There are some other errors growing out of the answers of the jury to the questions submitted by the court, some of which are material and others not. But, in view of the disposition we make of the case, we think it unnecessary to notice them, inasmuch as they will probably not occur upon another trial.

The judgment of the court is reversed and the cause remanded, with instructions to transfer the case to the District Court of Dallas County.

*Reversed and remanded with instructions.*