SANDERS v. GEORGE M. HESTER COTTON CO. (No. 7405.)

(Court of Civil Appeals of Texas. Galveston. April 27, 1917. Rehearing Denied May 17, 1917.)

1. APPEAL AND ERROR ⬅⚬551—STATEMENT OF FACTS—BILL OF EXCEPTIONS.

Where no statement of facts has been filed, the Court of Civil Appeals may examine the bill

of exceptions to ascertain the facts upon which the court below decided the question of venue.

[Ed. Note.—For other cases, see Appeal and Error. Cent. Dig. § 2457.]

2. VENUE ⬅7—ACTION ON CONTRACT.
Where plaintiff advanced money upon cotton by accepting a draft attached to railroad bills of lading under a telephone agreement that defendant shippers would protect such advance by margins if cotton prices decreased, an action for the difference between the advance and the cotton's selling price after defendants failed to margin, is not on a written contract performable in plaintiff's county, within Rev. St. art. 1830, subd. 5, regulating venue in such cases, although there was a custom, independent of the telephone understanding, authorizing sales where shippers failed to margin on a declining market.

[Ed. Note.—For other cases, see Venue, Cent. Dig. §§ 13–16.]

Appeal from District Court, Harris County; Henry J. Dannenbaum, Judge.

Action by J. W. Sanders against the George M. Hester Cotton Company. From a judgment sustaining defendant's plea of privilege transferring a case, plaintiff appeals. Affirmed.

R. W. Franklin, of Houston, for appellant. A. B. Wilson, Robt. L. Cole, and Jno. F. Cole, all of Houston, for appellee.

GRAVES, J. [1] This appeal is from a judgment sustaining appellees' plea of privilege, and transferring the case to the district court of Victoria county. No statement of facts has been filed in this court, but the facts relied upon to sustain the venue in Harris county, where the suit was filed, may be thus summarized from the conclusions of fact filed by the court, and the bills of exception, which may be looked to for that purpose. Reed v. Robertson, 106 Tex. 56, 156 S. W. 196; Drummond v. Bank, 152 S. W. 740; Garrison v. Richards, 107 S. W. 861.

Appellant, who resided in Harris county, filed the suit in the district court of that county against appellees, who had never resided there, but at all material times had been and were residents of Victoria county; no one of appellees had ever signed any document or paper which provided specifically that the indebtedness sued on should be paid in Harris county, Tex., but that they had drawn the two drafts hereinafter set forth and attached thereto the bills of lading hereinafter described, and deposited them for collection with the Victoria National Bank.

Plaintiff introduced in evidence St. Louis, Brownsville & Mexico Railway Company bill of lading No. D–57, dated November 3, 1913, Bloomington, Tex., consigned to the order of G. M. Hester Cotton Company at Houston, Tex., "notify Sanders & Company, Houston, Texas," covering 122 bales of cotton marked "OXP," which bill of lading was indorsed, "G. M. Hester Cotton Company, by G. M. Hester." Also bill of lading for 33

bales of cotton, St. Louis, Brownsville & Mexico Railway Company No. D–45, dated Victoria, Tex., November 12, 1913, consigned to the Victoria National Bank at Houston, Tex., "notify Sanders & Company, Houston, Texas," said cotton marked "LXT," and said bill of lading indorsed, "Victoria National Bank."

Plaintiff also introduced in evidence two drafts as follows:

"Customer's Draft. Bloomington, Texas, November 3, 1913. B/L No. D–57. B/L for 122 bales attached, marked 'OXP.' First State Bank of Bloomington: Pay to the order of First State Bank of Bloomington, Texas, $6,408.08 sixty-four hundred eight and 8/100 dollars, value received, and charge same to account of Sanders & Company, Houston, Texas.

"[Signed] G. M. Hester Cotton Co., P. G."

"Customer's Draft. Bloomington, Texas, November 10, 1913. B/L No. —— for 33 bales At'd. First State Bank of Bloomington: Pay to the order of First State Bank of Bloomington, Texas, $1,948.32 nineteen hundred and forty-eight and 32/100 dollars, value received, and charge same to account of Sanders & Company.

"[Signed] G. M. Hester Cotton Co., G."

Plaintiff also introduced in evidence the following letter:

"July 22, 1913.

"G. M. Hester, Bloomington, Texas—Dear Sirs: We are in receipt of your favor of the 21st, and in reply beg to hand you herewith our private code together with difference sheet, and in telegraphing you, you will understand our price to be basis middling, landed Houston, weight and grade guaranteed by you. In sending our limits we will only telegraph you one word, for instance if we send the word 'Threatening' you will understand our offer to be 12¢ basis middling, landed Houston, or if we send 'Throttle' you will understand same to be 12½¢ basis middling, landed Houston. Any cotton you buy to be reported to us by telegraph and you will ship cotton to us at Houston, inserting in the B/L 'Through Flat' and draw on us with B/L attached for approximate value of the cotton, and when same arrives in Houston we will have it classed and weighed and send you account sales, together with our check for any balance due you, or if the shipment shows a loss we will expect your check by return mail. Please let us know when you expect the crop to begin to move, and when you desire us to send you limits.

"Yours truly,    Sanders & Company."

In November, 1913, the defendant, Hester, called the plaintiff by phone, and stated that the company had two lots of cotton which it desired to sell Sanders & Co., but not at the price named by their limits of that date. That he agreed that the said Hester Cotton Company should ship said cotton to him, and should draw on plaintiff as an advancement on the basis of 10 cents per pound, basis middling, landed Houston, and that Sanders & Co. should use the cotton, but that the price of the same should not be fixed until the defendant company decided to sell it, either on plaintiff's limits or the market price at Houston, but that the shipment, except for the fixing of the price, should be handled in the same manner as ordinary

sales provided for in said letter, but that in the event said cotton went down, the defendants were to margin the same, so as to keep the value of said cotton, together with the margin put up greater than the sum of money drawn for, and the freight; otherwise the plaintiff should sell it. The defendants did ship their cotton to plaintiff, and drew the above drafts and attached thereto bills of lading covering the same, which drafts and bills of lading were paid in Houston, Harris county, Tex., by the plaintiff. Said cotton was classed and weighed in Houston, and the freight thereon was paid in Houston.

The market value of the above-described cotton declined, and the defendants failed to keep up the margins on the same, and after repeated demands for them to do so, the said cotton was sold by the plaintiff for 12½ cents per pound, basis middling, landed Houston, and the price received therefor was $2,370.27 less than the amount for which the defendants had drawn after paying the freight, and defendants owed plaintiffs said $2,370.27. Womack, Evans, and Darrow, all experienced and qualified cotton men, testified that under the custom in vogue in Houston and throughout Texas in 1913, where under these conditions a shipper failed or declined to margin the cotton, the party advancing the money had the right to sell the cotton.

[2] It is the contention of appellant that these transactions and this course of dealings, aided by the prevailing customs peculiar to the cotton business, created and constituted a written contract performable in Harris county within the meaning of Revised Statutes, art. 1830, subd. 5. But we are unable to agree with him. It will be seen from this evidence that the real genesis of his cause of action as sued upon was a purely verbal agreement, to wit, the telephone conversation had between him and appellee in November, 1913, wherein the agreement was made, detailed in the above-recited evidence, to ship the two lots of cotton, one for 122 bales on November 3d, and the other for 33 bales on November 12th, out of which two shipments alone the indebtedness and cause of action sued on arose. It will be further noted that not even this verbal agreement made over the long-distance telephone, to margin the cotton in case of a decline below the amount that had been received on the drafts, specified that this was to be done in Houston, or Harris county.

It is not alleged, nor does it otherwise appear, that the cotton, which was actually received by appellant under these two bills of lading, was not at that time worth upon the market the full amount paid for it upon the drafts. By this verbal agreement under which it was so shipped to him, he was to use the cotton, and it was to be handled in the same manner as an ordinary sale to him, except that the price alone was not to be fixed until appellees later decided to sell it, unless before that time its value fell below the amount they had been so paid for it, in which latter contingency they were to margin it. This fall occurred, whereupon appellant called on them to put up the margin, which they failed to do, and he then, December 15th, closed out the cotton at its reasonable market value on that date, and sued appellees, upon their violated agreement to put up the margin, for the $2,370.27 deficit thus left between the amount he thereby realized upon his final disposition of this particular cotton and what he had formerly paid appellees for it.

It thus affirmatively appears that the contract or agreement out of which the liability grew was wholly verbal, being a conversation over the telephone, and that no cause of action in appellant arose until the price of cotton had so fallen and appellees had failed to meet his demand that they then margin it, and had thereby breached their implied contract to pay the resulting loss. It was not a suit upon the drafts or bills of lading, which had been used some time before this indebtedness arose merely as the means of procuring the advance payments on the cotton, and of assuring its safe delivery, both of which purposes had already been fully accomplished; nor even was the suit upon the letter quoted; and if it had been, its requirements as to payment could have been fully met by simply mailing a check for any deficit from Bloomington in Victoria county, the home of appellee Cotton Company.

Neither do appellant's pleadings make any different case than that thus shown from the evidence, the entire allegations, except for matter of inducement, etc., being reflected in this statement of the facts shown. It is true, as above stated, that appellant invokes the prevailing customs in the conduct of the cotton business at Houston in aid of his contention; but we do not think these general customs may be thus ingrafted upon a purely verbal agreement, made over the long-distance telephone, for the purpose of thereby creating a contract in writing performable in a particular county, and perforce thereof haling defendant out of the county of his domicile to answer a suit upon it in a different county. And this outstanding and affirmatively shown fact that the suit here was for the breach of a purely verbal agreement, detached from and disassociated with any writings which provided for, or necessarily meant, performance in Harris county, differentiates this case upon its facts from Mangum v. Keller, 161 S. W. 19, cited and relied upon by appellant. In that case no verbal agreement by telephone or otherwise, is shown to have superseded any preliminary correspondence or writings, and to have constituted the sole agreement for the

breach of which the suit was brought, as was the situation here.

We, therefore, agree with the learned trial judge in holding that the cause of action was not based upon any written contract or obligation performable in Harris county, and cite the following authorities as substantiating the principle applied: Lasater v. Waits, 95 Tex. 555, 68 S. W. 500; Hilliard & Bro. v. Wilson, 76 Tex. 181, 13 S. W. 25; Bigham v. Talbot, 51 Tex. 450; Burkitt & Barnes v. Berry, 143 S. W. 1187; Bomar Cot. Oil Co. v. Schubert, 145 S. W. 1193; Lindheim & Bro. v. Muschamp et al., 72 Tex. 33, 12 S. W. 125; Morrison v. Jalonick, 1 White & W. Civ. Cas. Ct. App. § 778; Cameron v. Webb, 3 Willson, Civ. Cas. Ct. App. § 417; Walthew & Sons v. Milby & Dow, 3 Willson, Civ. Cas. Ct. App. § 119; Borden & Antil v. La Tulle Merc. Co., 32 Tex. Civ. App. 477, 74 S. W. 788; Russell & Co. v. Heitmann & Co., 86 S. W. 75; McCullar Lbr. Co. v. Higginbotham, 118 S. W. 885; Birge v. Lovelady, 145 S. W. 1194; McCammant v. Webb, 147 S. W. 693; Casey v. Carr, 148 S. W. 601; Ogburn-Dalchau Lbr. Co. v. Taylor, 59 Tex. Civ. App. 442, 126 S. W. 48.

It follows that the trial court's judgment must be affirmed; and it is so ordered.

Affirmed.