AVERY et al. v. LLANO COTTON SEED OIL MILL ASS'N. (No. 8631.)

(Court of Civil Appeals of Texas. Ft. Worth. April 30, 1917. On Motion for Rehearing, June 2, 1917.)

1. VENUE ☞72—RESIDENCE OF DEFENDANTS —REMOVAL AFTER SUIT.

Where suit was brought against partners residing in another county, and after plea of privilege one of them moved his residence to the county where suit was brought, the plea was properly overruled on plaintiff's filing an amended petition showing such removal.

[Ed. Note.—For other cases, see Venue, Cent. Dig. § 127.]

2. PARTNERSHIP ☞11—CREATION—COMMUNITY OF INTEREST IN PROFITS.

If two partners who were to share in the profits of a venture joined with a third person, a partnership between the three was established by the community of interest in the profits as such, although no agreement was made to share in losses.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. § 26.]

3. EVIDENCE ☞177—SECONDARY EVIDENCE— GROUNDS OF ADMISSION.

Where one of the defendants was plaintiff's manager and entered into a partnership with the other defendants in a cattle transaction and was responsible for a confusion in plaintiff's books as to the amount of feed which had been furnished, secondary evidence to show the amount of feed furnished to feed the cattle in controversy was admissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 557, 570–579.]

4. APPEAL AND ERROR ☞882(8) — REVIEW — PREJUDICIAL ERROR.

Admission of testimony of an expert bookkeeper that it was impossible to determine from the books the amount of feed properly chargeable was not prejudicial to the defendants, where they were making the identical contention in their objection to the admission of the books in evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3597, 3598.]

5. APPEAL AND ERROR ☞637—BILL OF EXCEPTIONS—SUFFICIENCY—DEFINITENESS.

A bill of exceptions to the "books kept by plaintiff, including the original scales tickets and itemized accounts and statements taken therefrom," but which does not show just what books, scales tickets, and accounts were in fact introduced and in no manner identifies them, was so indefinite as to be of itself a sufficient ground for overruling the assignment predicated upon the ruling.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2784, 2829.]

6. EVIDENCE ☞177 — ADMISSIBILITY — BEST EVIDENCE—ESTOPPEL.

As one of the defendants was also plaintiff's manager and was responsible for confusion in the plaintiff's accounts, defendants are in no position to invoke the best evidence rule otherwise applicable, and plaintiff was entitled to introduce secondary evidence to prove such account.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 557, 570–579.]

---

7. APPEAL AND ERROR ⬥⟿882(8) — REVIEW — WAIVER OF ERROR.

Where defendants introduced in evidence the account which was attached to plaintiff's pleadings as an exhibit and made a part thereof, they waived their right to complain of its admission.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3597, 3598.]

Appeal from District Court, Tarrant County; R. B. Young, Judge.

Suit by the Llano Cotton Seed Oil Mill Association against J. C. Avery and others. Judgment for plaintiff, and the named defendant and another appeal. Judgment as to appellants affirmed, and as to other parties left undisturbed.

J. H. McLean, of Llano, and Lloyd H. Burns, of Ft. Worth, for appellants. Taylor, Allen & Taylor, of Henrietta, and John C. Miller, of Mineral Wells, for appellee.

DUNKLIN, J. The Llano Cotton Seed Oil Mill Association, a partnership firm, recovered a judgment against J. C. Avery, Earl L. Avery, and R. B. Latting for a debt of $1,644, due the plaintiff for cattle feed alleged to have been sold by plaintiff to the defendants, and from that judgment J. C. and Earl L. Avery have appealed.

There were other defendants in the suit, some of whom were dismissed from the suit and others secured judgments in their favor. As the issues which concerned them were in no manner material to the issues involved as between the other parties, those defendants will be no further noticed.

The plaintiff firm was the owner of a cotton seed oil mill in the town of Llano, and was engaged in manufacturing and selling cotton seed meal and other products of the cotton seed, which was bought and used as feed for fattening cattle. In conjunction with the mill, plaintiff maintained feeding pens which were leased to persons owning cattle and desiring to fatten them from the products of the mill. Plaintiff alleged that the feed for the value of which the suit was instituted was sold to the two Averys and Latting, who were liable therefor as partners, and the judgment was rendered in plaintiff's favor upon that theory.

The suit was instituted in Tarrant county, and the first question presented is one of venue; appellants complaining that the court erred in overruling their plea of privilege to be sued in the county of Llano, which is the county of their residence. In the plaintiff's original petition, it was alleged that the two Averys resided in Llano county, and at that time Latting was not sued. Later, by plaintiff's second amended petition, Latting was also made a party defendant, and his residence was likewise alleged to be in Llano county. About two months later, plaintiff filed a third amended petition against the same defendants, in which it was alleged that, since the filing of the plea of privilege by the defendants J. C. and Earl L. Avery, the defendant Latting had moved his place of residence to Tarrant county, where he then resided. The same allegation was made in plaintiff's fourth amended petition, upon which the suit was tried.

It may be noted here that the residence of defendant Latting in Tarrant county was the only basis for overruling appellants' plea of privilege to be sued in Llano county.

Appellants insist that, as it appears from plaintiff's own pleadings Latting did not reside in Tarrant county at the time the suit was first instituted, his change of residence to Tarrant county did not affect the right of appellants to have their plea of jurisdiction determined according to the status of the suit at the time of its institution. In support of their contention, the appellants have cited such cases as Ogburn-Dalchau Lumber Co. v. Taylor, 59 Tex. Civ. App. 442, 126 S. W. 48; Lasater v. Waits, 95 Tex. 555, 68 S. W. 500. But in our opinion those decisions have no material bearing upon the question now under discussion.

[1] We are of the opinion that, as the proof showed without controversy that Latting was a resident of Tarrant county at the time the third amended petition was filed and continued to reside in that county up to the date of trial, there is no merit in the contention of appellants noted above. At the time of such amendments plaintiff could have dismissed its suit and instituted a new suit, which no doubt would have properly fixed the venue of the suit in Tarrant county as against the two Averys as well as against Latting, and, if such a result could have been accomplished by filing a new suit, we see no reason why the same result could not be accomplished by the amended pleadings; the only difference being the possible question of taxing costs against the plaintiff accrued up to the date of the amendment, and it being a well-settled rule that even a new cause of action may be set up by amended pleadings. Ballard v. Carmichael, 83 Tex. 355, 18 S. W. 734.

Appellants insist further that the evidence did not show that the debt for which judgment was rendered was a joint obligation of themselves and Latting, but was an individual debt of Latting alone, and for that reason their plea of privilege should have been sustained, citing in support of that contention such decisions as T. & P. Ry. Co. v. Mangum, 68 Tex. 346, 4 S. W. 617; Russell & Co. v. Heitmann & Co., 86 S. W. 75; Thomas Goggan & Bro. v. Morrison, 163 S. W. 119; Stephens v. First Nat. Bank, 146 S. W. 622.

The evidence shows that the defendant Latting was the local manager in charge of plaintiff's mill with authority to sell its products; that the two Averys owned 82 head of cattle which they desired to feed; and that feed was furnished from plaintiff's mill

for that purpose, of the value for which plaintiff recovered judgment. But according to the testimony of appellants, supported by that of other witnesses, it was agreed between themselves and Latting that Latting would himself, and at his own expense, furnish the feed for the cattle, and that from the proceeds of the sale of the cattle after they were fattened appellants should receive the cost price of the cattle, and that the amount of such proceeds over and above such cost price would be divided equally between themselves on the one hand and Latting on the other. However, Latting's testimony would support a finding that the feed was furnished upon the joint account of himself and the Averys.

[2] Even though it could be said that, under the testimony offered by appellants themselves, they and Latting were to share in the profits of the venture alone, a partnership between them and Latting was clearly established; for, as said in Cothran v. Marmaduke, 60 Tex. 370:

"It is not essential to constitute a partnership that the parties were by agreement to share in the losses, but it is sufficient if they are to have a community of interest in the profits as such."

In that case the following is quoted from Storey on Partnership, par. 58:

"That he who is to take a part of the profits shall by operation of law be made liable to losses as to third persons, because by taking a part of the profits he takes from the creditors a part of that fund which is the security for the payment of their debts."

To the same effect, see, also, Kelley v. Masterson, 100 Tex. 38, 93 S. W. 427.

But, independent of that conclusion, the testimony of appellants shows further an agreement to share losses as well as profits, in that, under the contract alleged by them, should the cattle, after being fattened, sell for less than their cost price to appellants, then appellants would sustain a loss, and Latting would also sustain a loss in the cost price of the feed.

The feed so furnished was charged on plaintiff's books, kept by and under the supervision of Latting, to the account of Earl Avery, one of the defendants, and the proof shows without controversy that none of the members of the plaintiff firm had any notice at any time of the alleged agreement, if any there was, between the Averys and Latting that Latting was buying the feed upon his own individual account, and the proof shows further without contradiction that Latting had no authority from any one of the plaintiff firm to make such an agreement. In view of the foregoing conclusions, it follows that appellant's assignment of error to the action of the court in refusing to sustain their plea of privilege must be overruled.

[3] The testimony offered by the plaintiff over appellant's objection, the admission of which is complained of in the third and fourth assignments of error, was offered as secondary evidence to show the amount of

feed furnished the cattle in controversy, and having been made necessary by the act of Latting, himself, in confusing the account for such feed with another account, as hereinafter noted, there was no error in its admission.

It appears that plaintiff's books showing sales accounts were kept by the defendant Latting, assisted by H. F. McLeod, who also did stenographic work and performed other services. It also appears that, at the same time that the sales in controversy were made, other sales were made to feed other cattle known as the Avery and Talley cattle. Latting testified that these two accounts had become confused so that it was impossible to determine with accuracy from the books the particular items of feed which went to the cattle in controversy and which went to the Avery-Talley cattle. W. H. Jackson, an expert bookkeeper, who was employed by plaintiff to audit the books and who did audit the same, was introduced as a witness by plaintiff and testified, as did Latting, that it was impossible to determine from the books the amount of feed properly chargeable to the two accounts, and further that the majority of the sales tickets for feed for the Avery cattle were signed by McLeod, the assistant bookkeeper.

[4] Complaint is made of the admission of that testimony of Jackson, but we fail to perceive how it could be said that it was prejudicial to appellants, since they were making that identical contention in their objection to the admission of the books in evidence, as noted below. And no assignment is presented to other testimony by Jackson, to the effect that, after a careful examination of the books and other data found by him in plaintiff's office, the account sued on was correct, so far as could be determined from such date.

[5] Complaint is made of the admission in evidence of "the books kept by plaintiff, including the original scales tickets and itemized accounts and statements taken therefrom." The bill of exceptions upon which this assignment is predicated refers to the evidence to which objection was made in the language above quoted, but does not show just what books, scales tickets, and accounts were in fact introduced, and in no manner identifies them. The objections urged to the admission of the books were, substantially, that the correctness of such books and other data was not proven by McLeod, the person who made some of the original tickets from which the account was made up. The objection to the evidence stated further that McLeod's testimony was available, but there was no showing in the record that such was true. This lack of definiteness in the bill of exceptions is of itself a sufficient ground for overruling the assignment predicated on the ruling now under discussion.

[6] If, as insisted by appellants, the two accounts were confused to such an extent

that they did not show a correct statement of the account, and if Latting, one of the partners, and also local manager for plaintiff, was responsible for that confused condition, plaintiff should not in equity be caused to suffer a loss through inability to make the proof according to the general rules applicable in other cases. Under such circumstances, the appellants are in no position to invoke the best evidence rule otherwise applicable, and are in no position to invoke the best evidence rule otherwise applicable, and are in no position to say that plaintiff should not be allowed to prove up the case by the best means available, even though the same should be secondary evidence; their partner Latting being responsible for plaintiff's inability to produce primary evidence.

[7] Furthermore, assuming that the bill of exception had reference to the account for feed sold upon which plaintiff's suit was predicated, then appellants' right to complain of its admission was waived, because, as shown by the record, they themselves introduced in evidence that account which was attached to plaintiff's pleadings as an exhibit and made a part thereof.

For the reasons indicated, all assignments of error are overruled, and the judgment complained of is affirmed. The judgment as to other parties of which no complaint is made is undisturbed.

### On Motion for Rehearing.

In our original opinion in the discussion of the assignment to the admission in evidence over appellants' objection of "the books kept by plaintiff, including the original scales tickets and itemized accounts and statements taken therefrom," we said that the bill of exceptions to that action of the court in no manner identifies the evidence so admitted. Upon further examination of the bill, we find that the account so admitted was identified as the account sued on. To that extent the statement in the original opinion was incorrect, but in all other respects the statement was correct, in that the bill does not identify what is termed the "original scales tickets," not even by a reference to the statement of facts.

Complaint is made further that while the record shows that appellants introduced in evidence defendant's second amended original petition, to which the plaintiff's account had formerly been attached as an exhibit, it further shows that the exhibit itself was introduced in evidence by the plaintiff. A further examination of the record sustains that contention, and our original opinion is, accordingly, corrected in that respect. But aside from the corrections made we are of the opinion that the assignment of error to the admission of the documents mentioned was properly overruled for other sufficient reasons given in the original opinion.

We are of the opinion further that our findings of fact already made sufficiently cover the issues upon which appellants request further findings.

With the foregoing corrections, the motion for rehearing is overruled.