# MIDLOTHIAN OIL & GIN CO. v. COMMERCIAL STANDARD INS. CO.

## No. 3729.

Court of Civil Appeals of Texas. El Paso.

Sept. 15, 1938.

Rehearing Denied Oct. 6, 1938.

Guthrie & Guthrie, of Dallas, and J. L. Gammon, of Waxahachie, for appellant.

Touchstone, Wight, Gormley & Price, of Dallas, for appellee.

WALTHALL, Justice.

This case is before us on an appeal from an order of the District Court of Dallas County overruling the plea of privilege of appellant, a private corporation, to be sued in Ellis County, the county of its residence.

Appellee, a private corporation, by its first amended original petition, as plaintiff, brought this suit against appellant, as defendant, in the District Court of Dallas County on August 13, 1936, alleging appellant to be a private corporation with its principal place of business in Ellis County,

with an agency or representative in Dallas County.

Appellee's suit is upon a verified statement of account attached to and made a part of its petition by an exhibit marked Exhibit A.

Appellee, in its first count in its petition, alleges that on or about September 1, 1932, and on occasions thereafter, it sold and delivered to appellant insurance policies and protection for liquidated amounts as set out in written contracts described, copies of which are attached to its petition and made a part of it, and upon which said open account, it is alleged, a systematic record has been kept as set out in said attached exhibit; that the total amount of said verified open account now due is $1,-998.87. The petition alleges demand and refusal to pay.

In its second count the petition alleges a series of written contracts were entered into by appellant and appellee in the form of insurance policies; that the policies covered a period of time from September 1, 1932, up to and including the first day of September, 1935, and were what is known as Workmen's Compensation Insurance Policies, copies of which are attached to and made a part of the petition by exhibits; that by the terms of said contract, executed at Dallas, appellant agreed to pay appellee the respective premium amounts as set out therein; that of the amount appellant agreed to pay appellee there is due and unpaid $1,998.87; the petition alleges demand and failure to pay. Appellee alleges that it fulfilled its undertaking and obligation under the contracts and did all things it agreed to do, but that appellant has failed and refused to pay the amount due appellee to its damage $1,998.

Appellee alleges that prior to the time said contracts (marked exhibits) were entered into appellant "wilfully schemed and planned to so misrepresent the true amounts of its pay roll to the plaintiff (appellee)' who was to write its insurance, upon which pay roll premiums of insurance were to be paid, as to defraud the plaintiff (appellee) of a substantial portion of said premiums; that defendant (appellant) who was a subscriber or policyholder of workmen's compensation insurance, did, during the time the aforesaid contracts of insurance were in force, * * * wilfully misrepresent the amount of its pay roll to the plaintiff (appellee) * * * and that thereby and as a result thereof, under Article 8309, Sec. 3a, of the 1925 Revised Civil Statutes of Texas, the defendant (appellant) became liable to the plaintiff (appellee) who was insuring the compensation of its employees in an amount not to exceed ten times the amount of the difference between the premium which it paid and the amount which defendant should have paid had the pay roll been correctly and honestly computed by defendant;" that the amount not to exceed ten times this difference is $19,987.70, for which amount appellant is liable to appellee and for which appellee now sues. Appellee then proceeds in its petition to sue for said amount.

Appellant, on July 11, 1936, filed its plea of privilege to be sued in Ellis County as the proper place in which the suit should be brought. The plea is in proper and statutory form.

Appellee, on July 12, 1936, filed a controverting affidavit alleging that appellant was a private corporation and that the cause of action, or a part thereof, arose in Dallas County, and that appellant had an agency or representative in Dallas County.

The court heard the evidence on the plea and the controverting affidavit, instructed the jury to return its verdict against the plea of privilege, entered an order overruling the plea, and appellant appeals.

### Opinion

Appellee alleged in its controverting affidavit that appellant was a private corporation and that it has an agency or representative in Dallas County. Section 23 of Article 1995 is one of the exceptions in our venue statute which provides that no person who is an inhabitant of this state shall be sued out of the county in which he has his domicile except as therein provided. Section 23 of Article 1995 provides that suits against a private corporation may be brought in any county in which such corporation has an agency or representative.

The material evidence heard on the trial is, substantially, to the effect: E. B. Hall sold a cotton gin to appellant Midlothian Oil & Gin Company more than thirty years ago. A. E. Eschleman has been running that gin the last few years for the Midlothian Oil & Gin Company; that gin is located in Dallas County. Mr. Eschleman lives right across the road from the gin, in Dallas County; has seen him every few days around the gin during the last several years; he has lived there about twenty-five or more years; witness had occasion to be present at times when Eschleman

would buy cotton and cottonseed and when transactions were going on, and has been present when he was giving instructions to employees around the gin about some directions as to things about the gin; witness detailed many things he had observed Eschleman do about the gin in its management: buy cotton, buy seed, write checks, tell employees what he wanted them to do, get the yard cleaned up; told one what to pay for cotton. Harrison S. Hood has been working for the Midlothian Oil & Gin Company some twenty years, helping Eschleman run the gin stand for years; he lives in Dallas County.

On cross-examination witness Hall said he had been around the gin for several years and has seen them working and managing the gin, but what their several jobs were he knew only what they had told him; did not know what day, June 10th, June 11th, June 12th or any of the dates inquired about, whether the men were at or about the gin apart from what somebody told him.

G. W. Harvey testified: Lives in Dallas County; am farmer; have worked the gin in question as engineer; understands that Mr. Eschleman is manager; he and Mr. Hood tell me when to fire the boilers; Mr. Hood issues the checks; they are drawn on the First State Bank of Midlothian; Midlothian Oil & Gin Company pays the checks; have worked three years, as engineer two years; Mr. Eschleman hired witness; first went to work there about three years ago in the summer; Eschleman and Hood live in Dallas County, near the gin and have lived there many years; had cotton ginned and sold cottonseed there some ten years, for about ten years before working there, dealt with Eschleman as manager of the gin.

Cross-examination: The gin business is not an all-year around business; the gin season months are about August to January; there is nothing to do at the gin when the ginning season is over; don't know about Mr. Eschleman, but I am paid just through the ginning season; am re-employed each year; doesn't know about the dates, but thinks he was working on June 10, June 12 and July 11, 1936; did some repair work before the ginning season opened.

A. E. Eschleman testified: Lives at Duncanville, Dallas County; has charge of the Midlothian Oil & Gin property there; lives just across the railroad and highway opposite the gin in Dallas County; has lived there fifty-six years; has been manager of the Midlothian Oil & Gin there about twenty years; my duties are varied, have charge of the gin plant, have charge of the buying of cotton, handling all the seeds, hiring the men and firing them if necessary; my other men there are paid by check on the Midlothian Oil & Gin Company; the "Duncanville Gin Company" is stencilled on the checks and my name is below that; witness receives his pay check from the office at Midlothian, signed Midlothian Oil & Gin Company; witness's salary is paid monthly. Question: "And for how many months of the year are you paid a salary?" Answer: "About ten months, or the gin season." Question: "Well, you get two months off for a vacation, two months that you don't receive a salary?" Answer: "Yes, sir." Question: "What two months is it they don't pay you a salary?" Answer: "June and July." Continuing, witness said: There is nothing to do in looking after the gin in June and July; if anything should come up with reference to the gin in June and July, anything they should know about, I would, as a common courtesy, call them up by telephone to send a man to attend to it; don't need to look or go around the gin for June and July, from my front porch I can see the plant; can't say whether I do, more or less, look after the plant during the season when no ginning is going on, am not called on to do it because I know there is a man from the office that has charge of it during those two months; did not know where he was on June 10, June 11, nor on July 12, 1936; would not state positively that he did or did not do something for the Midlothian Oil & Gin Company one of those days; other employees are employed by the day or by the week; we do not contract for more than ten months time; during June and July the Company has an inspector or supervisor that comes out from Midlothian and looks after that gin; anything I would do during June and July would be matter of courtesy or voluntary on my part; have never charged the Company for extra work or extra days time, the chances are I have rendered the Company some little service during June or July during the twenty years I have given of my service; during June and July the doors of the gin are locked and the windows are boarded up.

Harrison S. Hood testified: Lives in Dallas County and worked for the Mid-

lothian Oil & Gin Company and is paid by check by that Company; when Eschleman is not at the gin witness is responsible for looking after it; we commenced repair work in 1936 in July, could not say whether we worked in June or not; could not say positively what time in July, "along about the 10th I would say." While so employed "I would sorta be the foreman of that business and see about the work in general and help them. I hardly think we commenced in June. I think it was in July when we commenced." Question: "About July 10th?" Answer: "Sometime in the first of July, I would say. I couldn't say just what date we commenced because just from memory I would not have occasion to remember the date we commenced." Question: "You said a moment ago it was may be in the first part of July?" Answer: "I would guess about the 10th, it may miss it a week either way." Question: "In other words, it might have been the 6th or the 13th, which was the next Monday?" Answer: "It might have been the 6th." Witness said in answer to question on cross-examination that he was "just guessing about it," because he doesn't remember.

M. N. Straus testified: Lives in Dallas County and runs a gin, as manager, at Cedar Hill in Dallas County; the gin belongs to Midlothian Oil & Gin Company; has been running that gin since 1926; am paid by checks; the checks come by mail from Midlothian Oil & Gin Company; am paid every month for twelve months, each check amounts to $80.00, less one percent, the tax; I buy cotton for them and I usually hire the gin crew and put them to work; I buy cotton and settle with the farmers so far as ginning, seed and cotton are concerned; Mr. Calvert is my gin foreman; I hired him and tell him what to do; am employed each year for the gin season; I elected to ask them to send my checks monthly instead of annually; am employed three or four months; I have no duties except in the ginning season, and the pay I receive is only for the ginning season; they call on me for nothing except during the ginning season; if they did call on me I would do it; if I did any work about the gin outside of the season, I usually send some one of the boys from the store that works for me by the month, and I give them a check for the labor they do; the Company has a man to come from Midlothian to inspect the gin and lock it;

there is nothing to be done around the gin except during the gin season.

M. A. Dillard testified: Lives at Midlothian, in Ellis County; is manager and treasurer for Midlothian Oil & Gin Company; at Duncanville some repairs had to be made in July, 1936; don't recall exact date but in the latter part of July a new boiler was put in; Mr. Cowart, the Company's supervisor, had the supervision of the work, he employed the crew; Harrison Hood was wrong when he said he was there as foreman; all contracts of hire as to gin employees expire on May 31st. I look after all the gins; naturally the managers at various points keep their eyes on the gin when not in season and let me know if anything needs attention, but I would not expect them to take charge, as we have a man for that; the responsibility is not with them; the Midlothian Oil & Gin Company is a private corporation.

Appellant submits that under Article 2007 of the Revised Civil Statutes the evidence shows, by a preponderance thereof, that at the time of the institution of the suit on June 8, 1936 and at the time of the service of process thereon, on June 12, 1936, and at the time of the filing of the plea of privilege on July 11, 1936, appellant did not have an agency or a representative in Dallas County, and that because appellant had no agency or representative in Dallas County on any of said dates, the court was in error in overruling its plea of privilege.

Appellant in its plea of privilege tendered the issues of fact under Article 2007, Revised Civil Statutes, that at the time of the institution of the suit, nor at the time of the service of process on it, nor at the time of the filing of its plea, it was not a resident of Dallas County, but that at such times it was a resident of Ellis County. Appellee did not, in its petition, nor in its controverting affidavit, distinctly controvert those issues of fact as to appellant's residence at said several times, but did plead in its controverting affidavit that appellant was a private corporation "and has an agency or representative in Dallas County, Texas."

To appellee's controverting plea, appellant, on October 12, 1937, filed and presented a general demurrer, which the court overruled, and to that ruling appellant excepted and complains here of the ruling. In view of the disposition we have concluded to make on the principal issue in the

case, the agency that appellant had in Dallas County at a time other than the times stated in its plea, we do not think it necessary to discuss or pass upon the error, if error, in overruling the demurrer. Under the evidence solely, stated extensively above, we think it most doubtful whether appellant had an agency or representative in Dallas County at any of the times stated in its plea.

The record shows, however, that the case was heard and tried on the plea of privilege and the controverting plea on the 12th day of October, 1937, and that pending the suit and at the time of the trial, appellant admittedly had its gins in Dallas County in operation and at that time had its agents and representatives in charge.

Under the facts we think the case as to venue is ruled by Avery et al. v. Llano Cotton Seed Oil Mill Association, 196 S.W. 351, by the Fort Worth Court of Civil Appeals.

That suit was brought by Llano Cotton Seed & Oil Mill Association in Tarrant County against J. C. Avery, Earl L. Avery, R. B. Latting and other defendants dismissed from the suit. In plaintiff's original petition it was alleged that the two Averys resided in Llano County, and at that time Latting was not sued. Later, by plaintiff's amended petition, Latting was made a party defendant and his residence was likewise alleged to be in Llano County. Later plaintiff filed a third amended petition in which it was alleged that since the filing of the plea of privilege by the defendants Avery, Latting had moved his residence to Tarrant County where he then resided. The same allegation as to residence was made in the fourth amended petition, upon which the suit was tried. The residence of Latting in Tarrant County was the only basis for overruling the Averys' plea of privilege to be sued in Llano County. In the Averys' appeal they insisted that Latting's change of residence to Tarrant County at the time the suit was first instituted did not affect their right to have their plea of venue determined according to the status of the suit at the time of its institution. The court held there was no merit in the contention; that at the time of the amendment of plaintiff's petition plaintiff could have dismissed its suit and brought a new suit which would have properly fixed the venue in Tarrant County, and that if such a result could have been accomplished by filing a new suit the court could see no reason why the same result could not be accomplished by the amended pleadings, the only difference being the question of taxing the costs up to the date of the amendment.

Here, as stated, appellee filed its amended petition on August 13, 1936, and the trial was had in October, 1937, at times when, according to the evidence, the gins were operating and appellant had its agency and representatives in Dallas County.

The case is affirmed.