**SHEPPARD FEDERAL CREDIT UNION, Appellant,**

v.

**Michael A. PALMER, Appellee.**

**No. 25923.**

United States Court of Appeals Fifth Circuit.

Feb. 26, 1969.

Rehearing and Rehearing En Banc Denied April 23, 1969.

Robert M. Helton, Donald E. Short, Wichita Falls, Tex., for appellant.

Charlye O. Farris, Wichita Falls, Tex., for appellee.

Before GEWIN, PHILLIPS * and GOLDBERG, Circuit Judges.

GEWIN, Circuit Judge:

Subsequent to the oral argument in this case, the court's study of the record disclosed what appeared to be an erroneous allocation of burden of proof. Since the parties had not argued the point, the court requested and received from the parties supplemental briefs addressed to the questions (1) whether the district court had erred in its instruction to the jury on burden of proof and (2) if there was error, whether it was *plain error* requiring this court's recognition despite the fact that no objection was made to it in the court below. After a careful consideration of the law and the facts, we have concluded that the district court erred and that the error, in the circumstances of this case, was plain error; accordingly, we reverse the judgment of the district court.

The crux of the dispute in the trial of this case was whether the appellant Credit Union's seizure of the appellee Palmer's automobile was legally justifiable. Palmer had borrowed money from the Credit Union to purchase the car and the latter had taken a security interest in it. The security agreement contained the following acceleration clause:

> [I]f said mortgagee shall at any time deem said mortgagor, said chattels, said debt or said security unsafe or insecure, then upon the happening of said contingencies or any of them, the whole amount herein secured remain-

* Judge Harry Phillips of the Sixth Circuit, sitting by designation.

ing unpaid, is by said mortgagor admitted to be due and payable, and said mortgagee may at said mortgagee's option (notice of which option is hereby expressly waived), foreclose this mortgage by action or otherwise, and said mortgagee is hereby authorized to enter upon the premises where said goods and chattels may be, and remove and sell the same and all equity of redemption of the mortgagor therein . . . .

Although this so-called insecurity clause is drafted in the broadest possible terms, the Texas Uniform Commercial Code makes it clear that the secured party can accelerate "only if he in good faith believes that the prospect of payment or performance is impaired."[1] Deeming itself insecure, the Credit Union in this case seized Palmer's automobile which was still under the Credit Union's control at the time of these proceedings. The primary question in the court below was whether the creditor's action stemmed from a reasonable, good-faith belief that its security was about to become impaired.[2]

In its instructions to the jury the district court stated in part:

> Palmer is entitled to damages unless Credit Union proves by a preponderance of the evidence that it had reasonable grounds to believe that on February 9, 1967 the debt involved herein or said security was unsafe or insecure . . . .

The court emphasized this charge by repeating the substance of it in its rather brief instructions. Moreover, the first special issue out of six submitted to the jury was couched in the same terms. The charge clearly placed the burden of proof upon the Credit Union to establish the reasonableness of its conduct. However, the Texas UCC states: "The burden of establishing lack of good faith is on the party against whom the power [to accelerate] has been exercised."[3] The error committed here is patent. Under the Texas law, the creditor is presumed to have acted in good faith. The trial court in this case turned the presumption around when it placed the burden of proof on the creditor.

When the record on appeal discloses that an error has been committed which results in a miscarriage of justice, this court must reverse even though the party prejudiced raised no objection in the court below.[4] The determination of whether justice has miscarried is not always easy. The criterion is certainly not whether the court approves or does not disapprove the result of the case. In many instances, such a standard would permit the court to substitute its own policy judgment for that of the state legislature. Indeed, in the present case, as a matter of policy, this court does not disapprove the result in the district court, because "[t]he . . . decision to throw the burden of proof on

---

1. Tex. Bus. & Com. Code tit. 1, § 1–208 (1967). The Uniform Commercial Code was originally adopted by Texas in 1965, with an effective date of June 30, 1966; the Code was subsequently recodified, effective September 1, 1967, and included as part of the Texas Business and Commerce Code.

2. In his excellent treatise on security interests, Professor Gilmore indicates that the language of UCC § 1–208 means in substance that "[t]he creditor has the right to accelerate if, under all the circumstances, a reasonable man, motivated by good faith, would have done so." 2 Gilmore, Security Interests in Personal

Property § 43.4, at 1197 (1965). This is not inconsistent with the rule in Texas previous to the adoption of the UCC. *See, e. g.,* Commercial Credit Equipment Corp. v. Elliott, 414 S.W.2d 35, 44 (Tex. Civ.App.1967).

3. Tex. Bus. & Com. Code tit. 1, § 1–208 (1967).

4. *See* Ross v. Up-Right, Inc., 402 F.2d 943, 946 (5th Cir. 1968) ; Chagas v. Berry, 369 F.2d 637, 641 (5th Cir. 1966) ; Haugh v. Curlee, 265 F.2d 130 (5th Cir. 1959) (per curiam) ; Sadacca v. Nylonet Corp., 254 F.2d 238 (5th Cir. 1958) (per curiam).

the debtor is debatable." [5] However, we are not at liberty to accept or reject the legislative policy of the state of Texas; we are bound to apply state law as it is, not as we might wish that it were.

 Thus, for purposes of the plain error rule, justice is done when a person has received substantially everything to which he is entitled under the applicable law. If the court were convinced that the verdict and award in this case would have been substantially the same under proper instructions on burden of proof, the judgment would have to be affirmed, for the Credit Union would have received substantially everything to which it was entitled under Texas law. However, on the record before us, we cannot say that a correct charge would have made no substantial difference. Burden of proof is always of major importance and, in this case where the evidence was close on the question of good faith, it was crucial.

The evidence introduced during the trial tended to establish some facts favorable and some detrimental to both parties. The Credit Union was a non-governmental corporation chartered under the Bureau of Federal Credit Unions and located on Sheppard Air Force Base in Texas. According to its manager, the Credit Union was "a non-profit organization, that provides low cost loans to its members and also offers them a fair dividend on their savings." The members of the Credit Union were primarily military personnel, including Palmer who was a second lieutenant stationed at the air base.

Palmer was a twenty-four year-old man who had joined the Air Force on May 28, 1966 for two years of service as a registered nurse. On October 11, 1966, some four and a half months after enter-

ing the service, he applied to the Credit Union for a loan. At that time his salary was $400 per month. Other than summer and part-time work, he had worked a total period of six months before entering the service. After the approval of his application, he authorized a Class E Allotment in the amount of $110.19 to be paid to the Credit Union once a month.

Palmer submitted his resignation to the Air Force on February 2, 1967, less than four months after receiving the loan. The next day he went to the Credit Union's offices and informed the appropriate officer of his resignation and of the possibility of its being accepted. He informed the officer that he was considering moving to Dallas to work. The officer then demanded the keys to the secured car and Palmer handed them over. Palmer protested that he had always been prompt in making his payments and that his nurse's license would permit him to get a job in forty-eight of the fifty states without retesting. Nevertheless, the officer retained the car keys and subsequently drove Palmer to his home. This repossession without prior notice was clearly contrary to the Defense Department's suggested Standard of Fairness which the Credit Union had adopted.[6] Subsequently, Palmer's resignation from the Air Force was accepted and he moved to Dallas where he secured a nursing job at a substantial increase in salary. In spite of the Credit Union's retention of his car, he continued to make the monthly payments fully and promptly. On May 5, 1967, Palmer filed suit in the United States District Court for the Northern District of Texas. After a full trial, the jury answered special interrogatories to the effect that the Credit Union's action had been malicious;

5. 2 Gilmore, Security Interests in Personal Property § 43.4, at 1198 (1965).

6. Item 9 of the Standard provided in part: If the security for your loan is repossessed and sold to satisfy or reduce your debt, the following conditions will be met:

(1) You will be given reasonable notice in writing of our intention to repossess.
(2) You will be notified after repossession of your total obligation to this credit union. This will include your loan balance, interest due to date and other costs incident to repossession and sale.

it awarded Palmer punitive damages in the amount of $4,225 as well as actual damages.

■■ On these facts we cannot say that proper instructions would not have altered the outcome in some substantial way. As regards this debtor, the Credit Union's determination that it was insecure was certainly erroneous; it could hardly have asked for a more conscientious and responsible debtor. However, it takes more than mere error to show unreasonableness or bad faith, not to mention malice. Thus on the real issues the evidence was closely divided, and we think that a jury could reasonably decide either for or against liability depending on its view of the facts. Accordingly, we are of the opinion that the district court's erroneous charge on burden of proof resulted in a miscarriage of justice.

■ In his supplemental brief, Palmer argues that his cause of action was based upon tort rather than contract and therefore, that the Texas Uniform Commercial Code provisions are inapplicable. We cannot accept this contention. Some of the main underlying reasons for enactment of the Code were "to simplify, clarify and modernize the law governing commercial transactions." [7] These purposes would be completely undermined if the provisions of the Code could be sidestepped merely by labeling a suit as a tort rather than a contract action. Any tort action which previously existed for unlawful repossession must be considered displaced to the extent that it conflicts with applicable Code provisions.[8]

Reversed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.

It is further ordered that the costs of this appeal be divided equally between the Appellant and the Appellee.