A. Henry SARA–NEC et al., Appellants,

v.

L. C. SLAPE, Appellee.

No. 6587.

Court of Civil Appeals of Texas, El Paso.

Feb. 2, 1977.

---

Legg, Saxe & Baskin, Reagan H. Legg, Midland, for appellants.

Vann Culp, Jimmie D. Oglesby, Garland Casebier, Midland, for appellee.

## OPINION

WARD, Justice.

This is an appeal from the granting of a temporary injunction which prohibited the Defendants from foreclosing under a deed of trust and from holding a trustee's sale of the encumbered properties. What is primarily involved is a factual controversy over alleged breaches in the payments and other obligations of the lien instruments. We affirm.

In February, 1976, the Defendant, A. Henry Sara-Nec, entered into a contract of sale with the Plaintiff, L. C. Slape, whereby the Defendant agreed to sell to the Plaintiff 148 separate rental homes and certain other properties in Midland for the sum of $1,110,000.00. Thereafter, the sale was completed, and, on February 24th, the Defendant executed his general warranty deed conveying the property to the Plaintiff, who paid $45,000.00 in cash, the deed reciting a further consideration of the assumption and the agreement to pay by the grantee of the then outstanding balances on ten promissory notes each in the original amount of $10,000.00, payable to the order of the First National Bank of Midland, the notes being secured by a superior deed of trust on ten of the homes, and the balance of the consideration being $963,000.00, as evidenced by a promissory note of even date, payable to the order of Mr. Sara-Nec, executed by the Plaintiff, and bearing interest at the rate of seven percent (7%) and being payable in monthly installments of $6,806.27 each, the first monthly installment being due and payable on April 15, 1976, and with a like installment being due on the 15th day of each succeeding month thereafter, said note providing for acceleration of maturity and attorney's fees in the event of default and being secured by the vendor's lien retained in the warranty deed, and being further secured by deed of trust of even date to William B. Smith, Trustee and a Defendant in this suit. The deed of trust provides that, upon breach of any of the conditions of the deed of trust or upon default in the punctual payment of the indebtedness or any part thereof, at the option of the holder the whole of the indebtedness will mature and become due and payable. Soon after closing of the sale, Mr. Sara-Nec complained to the Plaintiff of alleged breaches of the conditions of the deed of trust, and, on July 18, 1976, advised the Plaintiff in writing of his intention to foreclose under the power of sale. The Trustee posted notice on August 6th for sale on September 7, 1976. The Plaintiff then filed his suit, secured a temporary restraining order prohibiting the sale, and, after a hearing on September 7th, the temporary injunction was granted.

Certain special conditions of the deed of trust, which are similar to provisions contained in the original contract of sale, are involved. The Plaintiff agreed that he would deposit at the First National Bank of Midland a minimum of $1,500.00 as a tax reserve account each month starting March 15, 1976, in a joint account with the seller. The Plaintiff further agreed to make the seller sole beneficiary of a life insurance policy in the amount of $100,000.00, either by an assignment or by obtaining a special policy, the policy to be non-cancellable by the Plaintiff. And finally, the Plaintiff specifically agreed to keep all the properties and premises at his own expense in good repair and condition "TO THE PERSONAL SATISFACTION" of the seller.

The hearing on temporary injunction developed into a factual dispute of five alleged breaches of obligations contained in the instruments which, according to Mr. Sara-Nec, justified his acceleration of the note and his subsequent attempt to foreclose. According to this Defendant, these were: (1) failure to furnish the policy of life insurance in the amount of $100,000.00;

(2) failure to execute an assumption agreement with the First National Bank assuming the indebtedness required; (3) failure to furnish prepaid hazard insurance on the properties; (4) the making of late payments on the escrow account and to the Defendant; and (5) the failure to repair and maintain the properties according to the standard prescribed.

As to the policy of life insurance, the policy was applied for on May 8th, issued on July 6th, and delivered to Mr. Sara-Nec on July 19, 1976. However, it is noted that there was no time limit within which the policy had to be obtained, no requirement that it be delivered to this Defendant, and the Plaintiff testified that the several months delay was due to his inability to obtain life insurance because of a fluctuation in his blood pressure. The fact remained that it was obtained and the Defendant was covered before the attempted acceleration on July 18th.

On the assumption agreement, it was established that the Plaintiff never executed and delivered to the bank any such agreement. However, such a separate agreement was not called for by any of the instruments, and, in the deed, the grantee assumed the balance on the ten promissory notes in question, and the obligation was obviously self-executing.

As to the prepaid hazard insurance, on May 11th, Mr. Sara-Nec wrote the Plaintiff complaining that he had failed to prepay the hazard insurance. As testified at the hearing, Sara-Nec did this as "someone had told him" that the insurance was not totally prepaid. The Plaintiff testified that he furnished the necessary policy covering the properties which he had promptly delivered; that he paid $4,100.00 down; that at the time of the hearing had paid for five months premiums; and that the policies were always on a prepaid basis.

As to the late monthly note payments of $6,806.27, Sara-Nec testified that the May payment arrived in the mail on May 17th, and he returned the payment to the Plaintiff; that the July payment arrived on July 16th; and that though he had retained the July check and the August check, he had not cashed them. The Plaintiff testified that all payments had been made on time and the checks cashed, with the exception of the July payment which had been returned, and that the cancelled checks were available for examination. As to the payments on the escrow account in the amount of $1,500.00 to cover taxes and insurance, the proof was that the first deposit had been made on or before March 15th, and the similar deposit monthly thereafter. Contrary to the assumption made by Mr. Sara-Nec as to a specific due date on this monthly deposit, the deed of trust specifies only that the payment be made "each month."

The bulk of the testimony at the hearing regarded the failure of the Plaintiff to maintain the property "TO THE PERSONAL SATISFACTION" of the seller. Without detailing the testimony, it reflects that the repairs made were not to Mr. Sara-Nec's personal satisfaction. Dissatisfaction was expressed to the Plaintiff repeatedly, and on four occasions in writing. The properties had been acquired over a twenty-five year period, and undoubtedly needed constant repair and suffered somewhat from tenant abuse. The Plaintiff countered with his testimony that he had purchased about $2,000.00 worth of supplies for use on the properties during his nineteen weeks of ownership, and had expended $4,267.20 for outside labor for repairs in addition to his regular maintenance men who were paid $190.00 a week; that he had no vacancies at the time of the hearing; and that the properties were generating $800.00 a month more in revenues than when purchased. He testified that the properties on the whole were in the same condition as at the time of purchase, and that what Sara-Nec wanted was capital improvements to the properties in the amount of $25,000.00, which would have improved their condition over that which existed at the time of the sale. It was established that Sara-Nec had contacted some forty of the tenants to determine if they were dissatisfied with any conditions in the properties, and that beginning in May, he had planned a foreclosure

with a threatened deficiency judgment of $250,000.00 against the Plaintiff. Without more detailing, there was a reasonable inference arising that the Defendant's dissatisfaction was unreasonable and was made in bad faith.

The Defendants' three points of error are very broad; the arguments thereunder cover the field of temporary injunctions. The applicable principles for such a hearing are recognized. On the application for the temporary injunction, the only question before the Court is the right of the applicant to a preservation of the status quo of the subject matter of the suit pending the final trial. The applicant need only show a probable right and a probable injury, and he need not establish that he will finally prevail in the litigation. Where the pleadings and the evidence present a case of probable right and probable injury, the trial Court is clothed with broad discretion in its determination as to the issuance of the writ. *Transport Co. of Texas v. Robertson Transports*, 152 Tex. 551, 261 S.W.2d 549 (1953).

The remedy of injunctive relief is applicable and has often been sought by the landowner to stop or delay a sale under a deed of trust. The one with ownership and possession may be entitled to the writ as it protects against the disturbance of that title and possession, and in such a case, preserves the status quo. 6 Texas Practice, Injunctions, Sec. 27, at 51 (1973); 31 Tex. Jur.2d Injunctions, Sec. 69, at 148 (1962). The last peaceable status quo of the subject matter of the lawsuit will have been disturbed if the injunction is denied and the foreclosure carried out. *Erickson v. Rocco*, 433 S.W.2d 746 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.).

In this case, the Plaintiff's pleadings were sufficient in the absence of special exceptions. While the Plaintiff also sought declaratory relief, that relief went only to a determination of the existence or not of the alleged past breaches of the agreement relied upon by the Defendants in justification of their action in maturing the obligation and in attempting the foreclosure.

The trial Court judgment determined that the Plaintiff was entitled to the temporary injunction, the reasons set forth in the judgment being that the Plaintiff testified he was threatened with immediate and irreparable injury as a result of the Defendants' actions in purporting to foreclose and hold the trustee's sale of the real estate owned by the Plaintiff, and upon which he had made substantial down payments, monthly payments, and repairs, all in reliance upon the terms of the deed of trust, and all of which would be lost unless the foreclosure and sale were prevented, and that the Plaintiff had established a probable right to prevent the foreclosure by the Defendants under the deed of trust. Such recitations in a judgment adequately comply with the requirements of Rule 683, Tex.R.Civ.P. They are similar to those approved in *Transport Co. of Texas v. Robertson Transports*, supra. The order does not have to go further and set forth the reasons why the Court believed it probable that the applicant would prevail on a final trial. *State v. Cook United, Inc.*, 464 S.W.2d 105 (Tex.1971).

As to the evidence before the trial Court regarding the alleged breaches, we are required to review the evidence and draw legitimate inferences from the facts in evidence in the light most favorable to the trial Court's judgment. We have done so, and such implied findings show that the Plaintiff was not in default in any of the matters asserted to the extent necessary to justify the acceleration. *Erickson v. Rocco*, supra. As to the July payment on the note, it was tendered, received and retained by Mr. Sara-Nec before he exercised his option to accelerate on July 18th. Such a tender prevents an acceleration for that payment. *Hiller v. Prosper Tex, Inc.*, 437 S.W.2d 412 (Tex.Civ.App.—Houston [1st Dist.] 1969, no writ).

The existence of the "personal satisfaction" standard with respect to the repairs is not an absolute. The true test of that right is whether or not the party pos-

sessing the right has exercised good faith in the matter. 13 Tex.Jur.2d Contracts, Sec. 301, at 550 (1960). Impliedly, the trial Court, under the evidence, found against the position asserted by Mr. Sara-Nec, and the evidence supports the finding.

We have considered all of the Defendants' points and they are overruled. We do not undertake to determine the case on the merits. What we have stated applies only to the temporary injunction and is without prejudice to the rights of the parties to assert their claims and to offer evidence at any trial on the merits.

The judgment of the trial Court is affirmed.