**FORD MOTOR CREDIT COMPANY and Tradewinds Ford Sales, Inc., Appellants,**

v.

**Eddie POWERS and Priscilla Powers, Appellees.**

**No. 1736.**

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 12, 1981.

Rehearing Denied March 5, 1981.

Randall A. Hopkins, Baker & Botts, Houston, Fredrick F. Rogers, Porter, Gonzalez & Rogers, Corpus Christi, Andrew J. Lehrman, Sorrell, Anderson & Sorrell, Corpus Christi, for appellants.

Marcel S. Greenia, Corpus Christi, for appellee.

OPINION

YOUNG, Justice.

This case involves alleged violations of the Texas Consumer Credit Code, Tex.Rev. Civ.Stat.Ann., art. 5069–2.01 et seq.

On December 13, 1977, Eddie and Priscilla Powers purchased a new 1978 Ford Pinto from Tradewinds Ford Sales, Inc. in Corpus Christi, Texas. The purchase was financed by the execution of a retail installment contract between the Powers and Tradewinds Ford. The contract was subsequently assigned to Ford Motor Credit Company. The Powers later filed suit in Nueces County alleging violations of the Texas Consumer Credit Code and the Federal Consumer Protection Act. The trial court granted the Powers a partial summary judgment on the basis of violations of the Texas Consumer Credit Code. The trial court did not find any violation of the Federal Consumer Protection Act.[1] After a trial on the issue of attorneys fees, a final judgment was entered granting the Powers a recovery against Tradewinds Ford and Ford Credit in the amount of $11,301.72 plus attorneys fees.[2] Tradewinds Ford and Ford Credit appeal. We reverse.

▉▉▉ The issues before this Court concerning the trial court's finding of a violation of Chapter 14 of the Texas Consumer Credit Code were decided this day by us in *Ciminelli v. Ford Motor Credit Company et al.* (our cause number 1720). The *Ciminelli* case was affirmed because of the trial court's finding that the repeal of Chapter 14 by the Legislature in 1979, without a savings clause, destroyed any cause of action existing under that chapter. For the reasons set out in the *Ciminelli* opinion, we find that no cause of action existed for the Powers under Chapter 14, at the time of this lawsuit, and sustain appellants' Chapter 14 points of error.

▉▉▉ The issues before us concerning the trial court's finding of violations of art. 5069–7.03 of the Texas Consumer Credit Code were decided this day by us in *Ford Motor Credit Company v. McDaniel* (our cause number 1697). In that opinion, we held that the acceleration clause of the contract did not require the payment of unearned interest. A full discussion of the issues is set forth in the *McDaniel* opinion. All of appellants' points of error involving art. 5069–7.03 are sustained.

Substantially all of the issues before this Court concerning the trial court's finding of violations of art. 5069–7.07(1) of the Texas Consumer Credit Code were decided this day by us in *Grant v. Friendly Chrysler-Plymouth et al.* (our cause number 1704). In that opinion, we held that the acceleration provisions of the contract did not provide for acceleration in situations not allowed by the Credit Code. Instead, the acceleration provision therein substantially follows the wording of Article 5069–7.07(1). The instant case, however, presents somewhat different issues which require a full review by us of the acceleration clause in this contract in order to determine its compliance with art. 5069–7.07(1).

▉▉▉ At the outset, we note the statutory language setting out the grounds by which a seller or holder may accelerate the maturity of a note. Only two grounds are promulgated by the statute: "... (a) the buyer is in default on the performance of any of his obligations or (b) the seller or holder in good faith believes that the prospect of payment or performance is impaired; ..." [art. 5069–7.07(1)]. These statutory grounds for acceleration should not be in-

---

1. See, *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980).

2. Chapter 8 of the Credit Code, entitled "Penalties," was amended by the 65th Legislature in 1977. The enacting legislation provided that the amendments would apply to all transactions entered into prior to August 31, 1977, as long as an action under the Credit Code was not pending on that date. An exception was made for the penalty provision of Article 5069–8.01(b), which was to apply only to "transactions entered into after June 30, 1976, which have not been corrected as provided in Article 8.01(c)." The contract in this case was entered into after the effective date of the amendments. The trial court assessed penalties against the appellants pursuant to the amended version of Chapter 8.

terpreted as being mutually exclusive. When preparing his retail installment contract a seller or holder need not make the choice of either (a) or (b). A seller may include a condition for acceleration which embodies (a) and another condition which embodies (b).

■ In the contract before us, the default clause contains the following regarding acceleration:

"In the event Buyer defaults in any payment, or fails to obtain or maintain the insurance required hereunder, or fails to comply with any other provision hereof, or Seller in good faith believes that the prospect of payment or performance hereunder is impaired, Seller shall have the right to declare all amounts due or to become due hereunder to be immediately due and payable . . . ."

About the language "or fails to comply with any other provision hereof," if this clause does not comply with the statutory grounds for acceleration, then a violation of the Credit Code has occurred.

■ The phrase "any provision hereof" essentially complies with the Code language "any of his obligations." *Peden v. Ryan Oldsmobile, Inc.,* 606 S.W.2d 53 (Tex.Civ. App.—Fort Worth 1980, no writ). *Tradewinds Ford Sales, Inc. v. Caskey,* 600 S.W.2d 865, 869 (Tex.Civ.App.—Eastland 1980, writ filed); see also *Ogburn-Dalchau Lumber Co. v. Taylor,* 59 Tex.Civ.App. 442, 126 S.W. 48, 52 (1910, no writ). The language of the contract substantially tracks the language of the statute. The reasonable meaning of the two words "provision" and "obligation" in the context of an acceleration clause is identical. To hold that the words "provision" and "obligation" have a substantially different meaning negates the reasonable meaning of the words. Also, if there is reasonable doubt about the meaning of words employed in an acceleration clause, then the Court should adopt that meaning which comports with legality. *Walker v. Temple Trust Co.,* 124 Tex. 575, 80 S.W.2d 935 (1935). We hold, therefore, that the words "any provision hereof" are in compliance with the statutory language "any of his obligations."

■ Appellees also argue that several of the specific provisions of the Retail Installment Contract, upon which acceleration could be based, are unlawful and render the acceleration clause in violation of article 5069–7.07(1) of the Credit Code. The provisions of the contract of which appellees complain provide as follows:

Paragraph 16 requires in part:

". . . Buyer shall not transfer or otherwise dispose of any interest in this contract of the Property. . . ."

Paragraph 17 requires in part:

". . . Buyer shall keep the Property free from all encumbrances, . . . and shall not remove the Property from the county of his residence without the written permission of Seller. . . ."

Regarding those three provisions, appellees seem to argue that all of those provisions are unlawful and that permitting acceleration under that part of the contract that declares "or fails to comply with any other provision hereof" is therefore unlawful. We submit that there is a more reasonable construction of the contract which does not require a holding by us that acceleration by reason of breach of one or more of the three questioned provisions ("transfer," "encumberances," and "removal") is prohibited by section 7.07(1), as the following demonstrates.

■ The construction of the contract as legal involves our applying section 7.07(1)(b) to the three questioned provisions. Subsection (b) permits acceleration when "the seller or holder in good faith believes that the prospect of payment or performance is impaired." Language almost identical to that in section 7.07(1)(b) is contained in the default acceleration clause of the contract under consideration. Acceleration upon a sale of encumbered collateral by the buyer, without the consent of the secured party, has been heretofore upheld by Texas courts. *A. R. Clark Investment Co. v. Green,* 375 S.W.2d 425 (Tex.Sup.1964); *Beaumont Rice Mills v. Dishman,* 72 S.W.2d 365 (Tex.Civ.App.—Beaumont 1934, writ

ref'd). Further, the buyer may transfer his interest to a third party regardless of "a provision in the security agreement prohibiting any transfer or making the transfer constitute a default." Tex.Bus. & Comm. Code Ann. § 9.311 (1968). See also, *Poydan, Inc. v. Agia Kiriaki, Inc.*, 130 N.J.Super. 141, 325 A.2d 838 (1974). The seller or holder would surely have a legitimate interest in keeping the collateral free from mechanics or materialmen liens which would take priority over his own lien. Tex.Rev. Civ.Stat.Ann. art. 5503 (1951); Tex.Bus. & Comm.Code Ann. § 9.310 (1968); see *Gulf Coast State Bank v. Nelms*, 525 S.W.2d 866 (Tex.Sup.1975). Also, the removing of the collateral from the county of the buyer's residence might impair payment. See *Runnels Chevrolet Co. v. Clifton*, 46 S.W.2d 426 (Tex.Civ.App.—Beaumont 1932, no writ).

■ The question of whether a seller acted in "good faith" in accelerating maturity because of his belief that the prospect of payment or performance was impaired can only be decided on a case-by-case approach after acceleration has occurred. Tex.Bus. & Comm.Code § 1.201(19); *Sara-Nec v. Slape*, 546 S.W.2d 703, 708 (Tex.Civ.App.—El Paso 1977, no writ); *Commercial Credit Equipment Corp. v. Elliott*, 414 S.W.2d 35 (Tex. Civ.App.—Eastland 1967, writ ref'd n. r. e.). The Tex.Bus. & Comm.Code Ann. § 1.208 imposes a burden upon a buyer upon default and acceleration to prove that the seller did not act in good faith. Only after seller has accelerated can a determination be made as to whether his actions were done in good faith. *Sparkman v. Peoples Nat. Bank of Tyler*, 580 S.W.2d 868 (Tex. Civ.App.—Texarkana 1979, writ ref'd n. r. e.). Such a determination must be resolved by the trier of facts. Broad and inventive acceleration clauses have been upheld because of the "good faith" test imposed by § 1.208. *Sheppard Federal Credit Union v. Palmer*, 408 F.2d 1369 (5th Cir. 1969). We sustain all of appellants' points regarding article 5069–7.07(1).

The judgment of the trial court is reversed and judgment here rendered that appellees take nothing.

NYE, Chief Justice, dissenting.

I respectfully dissent. The majority of this Court has reasoned that no violation of Article 5069–7.07(1) has occurred. This reasoning circumvents the legislative intent and permits the seller and/or the finance company to "deceive the very individuals the legislature intended to protect; namely, the 'uneducated, the unsophisticated, the poor and the elderly' . . . ." *Southwestern Investment Company v. Mannix*, 557 S.W.2d 755 (Tex.Sup.1977).

The Credit Code, Tex.Rev.Civ.Stat.Ann. art. 5069–2.01 et seq., provides, inter alia, that the seller *may not accelerate* the maturity of the indebtedness unless "the buyer is in default on the performance of any of his obligations." The Code further provides a second ground for acceleration of the maturity of a note, when: the seller or holder in good faith believes that the prospect of payment or performance is impaired.

My objection stems from the broad and inventive "terms" that the sellers and their finance companies have concocted to permit them to go outside of the Credit Code's base (the two limitations named above) for an excuse to accelerate the maturity of the debt of the buyers. Rather than using the language of the Credit Code, which states that if the buyer is in default in the performance of "any of his obligations", the seller and/or the finance company, in the case before us, changed the Credit Code language to say if the buyer "fails to comply with any other provision hereof", the seller may accelerate, etc. In the "fine print", the seller and/or finance company had a list of "thou shalt nots", which included the taking of the vehicle outside of the county without their permission, or transferring any ownership of the vehicle to any other party, etc. In one of these situations, if a newly married person, for instance, should transfer his interest in his Ford Motor Credit Company financed car to his wife after marriage without the Company's consent, he would be violating the "extra terms" of the contract and the finance company could accelerate the maturity and

foreclose on the security. Many other examples could be fashioned by the sellers or their assigns if this opinion was permitted to stand and be the law.

The majority reasons that the courts should not penalize the seller or the finance company for their inventiveness in fashioning stricter terms than the Code provides because the courts can take each contract on a "case-by-case approach" after the acceleration has occurred and then make the buyer *"prove"* that the seller and/or the finance company did not act in "good faith." They reason that if a court can rearrange any of the inventiveness of the finance company's language to comport with legality, we should do so and uphold the finance company as against the buyer. This shift of the burden of proof was not intended by the legislature. The Code was enacted to prohibit certain actions by the sellers from ever happening, rather than trying to rectify the sellers' actions after the fact.

This Credit Code was the result of consumer legislation that was supposed to restrict the freedom of the seller from fashioning his own definition of default that might give rise to acceleration. The legislation limited the opportunity for acceleration to the two essential conditions: default of the obligations (i. e., of the note and mortgage) or the good faith belief (on the part of the seller and/or finance company) that the prospect of payment or performance had been impaired. The majority has legislated beyond these limitations.

The majority, in its opinion, also endorses the Federal court's approach (*Sheppard Federal Credit Union v. Palmer*, 408 F.2d 1369 [5th Cir. 1969]) that broad and inventive acceleration clauses are "all right" unless the buyer *can prove* that the seller and/or the finance company fabricated such clauses in *bad faith*. Not only does such approach emasculate the legislative intent, but it is, in my opinion, against the public policy of this State.

The approach that the majority has taken is not unlike that which was condemned by our Texas Supreme Court in *Southwestern*

*Inv. Co. v. Mannix*, supra. I would affirm the judgment of the trial court as it pertains to Art. 5069–7.07(1).

NYE, Chief Justice, dissenting on motion for rehearing.

I respectfully dissent for the reasons set forth in the original opinion. Accordingly, I would grant the motion for rehearing and affirm the judgment of the trial court as it pertains to Art. 5069–7.07(1).