JACK M. FINLEY, INC., Appellant,

v.

LONGVIEW BANK & TRUST COMPANY, Appellee.

No. 9347.

Court of Appeals of Texas, Texarkana.

Dec. 10, 1985.

Rehearing Denied March 4, 1986.

Jack M. Finley, Eldred Smith, Stephen Smith, Smith & Smith, Longview, for appellant.

Mike Hatchell, Ramey, Flock, Hutchins, Jeffus McClendon & Crawford, Tyler, Stephen McDaniel, Longview, for appellee.

GRANT, Justice.

Jack M. Finley appeals a summary judgment granted by the trial court in favor of the Longview Bank & Trust Company. Finley filed the initial suit seeking damages

for an alleged conversion of a $750,000.00 certificate of deposit. Both parties filed motions for summary judgment. The Bank's motion was granted, and Finley's motion was denied. Finley contends that the court erred in granting the Bank's summary judgment motion, in denying the Finley motion for a partial summary judgment, and in allowing the Bank to file a late response to the Finley summary judgment motion.

Finley executed a $750,000.00 promissory note to First Texas Titleshares, Inc. and secured that note with a $750,000.00 certificate of deposit. Titleshares executed a $750,000.00 promissory note to the Bank. As security for that note, Titleshares assigned its note from Finley and the certificate of deposit to the Bank. Additionally, Finley executed a collateral security agreement and pledged the certificate of deposit to the Bank. On April 29, 1983, Longview Bank declared itself insecure, invoked an acceleration provision of the note, and applied the pledged security (the certificate of deposit) against the balance of the note. Finley demanded that the Bank sue the principal. When it refused, he instituted suit for conversion.

In a summary judgment proceeding, the movant has the burden of proving that there is no genuine issue as to material fact and that he is entitled to judgment as a matter of law. *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589 (Tex.1975).

■ Finley argues that the court erred in granting the Bank's motion for summary judgment, because Titleshares' note was not in default inasmuch as the time for payment (May 8, 1983) had not yet arrived. The note from Titleshares to the Bank contained an acceleration provision which allowed the Bank to declare the note immediately due and payable upon the occurrence of certain conditions, including: dissolution, termination, insolvency, or bankruptcy of the borrower; or when, for any reason, the lender, in good faith, determined that the prospect of payment or performance of

the note for realization of collateral thereto was significantly impaired.

Therefore, delinquent payment was not the only condition which would allow the Bank to declare the note due and payable, and the occurrence of the conditions set forth above would allow the Bank to accelerate the note.

Finley also contends that the question of whether the maturity of the note had been accelerated in a "good faith" belief that prospect of payment or performance was impaired is a fact question and not suitable for summary judgment disposition.

The Bank gave three reasons for deeming itself insecure: (1) services upon the Bank of an Internal Revenue Service subpoena for Titleshares' Bank records; (2) a specific threat of bankruptcy by Titleshares communicated to the Bank; and (3) threats by Finley to institute litigation against Titleshares and/or the Bank which would seek to prevent acceleration of Titleshares' note to the Bank.

■ The Bank contends that Finley cannot rely on a "good faith" argument since Finley is not a party to the note between Titleshares and the Bank which contains a good faith requirement and because the collateral security agreement between Finley and the Longview Bank contains no "good faith" requirement. However, Tex.Bus. & Com.Code Ann. § 1.208 (Vernon 1968) provides that every acceleration provision based on a party's insecurity shall be construed to mean that the insecure party shall have the power to do so only if he in good faith believes that the prospect of payment or performance is impaired. Indeed, according to Tex.Bus. & Com.Code Ann. § 1.203 (Vernon 1968), every contract or duty (within Title 1, which includes secured transactions) imposes an obligation of good faith in its performance or enforcement. This section cannot be read to exclude third parties involved in a transaction.

Finley cites *Ford Motor Credit Co. v. Powers*, 613 S.W.2d 30 (Tex.Civ.App.-Corpus Christi 1981, no writ), for the proposi-

tion that a determination as to whether the Bank accelerated the note in good faith must be resolved by the trier of fact. Finley is correct that if a genuine material fact issue is disputed by the summary judgment proof, Tex.R.Civ.P. 166-A requires the trier of fact to make a determination. However, this does not preclude the granting of summary judgment if a material fact issue is not raised. Pleadings alone will not in and of themselves create genuine fact issues preventing a summary judgment. *Keahey v. Dallas Teachers Credit Union*, 374 S.W.2d 450 (Tex.Civ.App.-Tyler 1964, no writ). Issues required by this rule to be expressly presented are those pointed out to the trial court in written motions, written answers or written responses to the motion. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex. 1979). The *Ford Motor Credit Co.* case, *supra,* holds that the question of whether a seller acted in "good faith" in accelerating maturity because of his belief that the prospect of payment or performance was impaired can only be decided on a case-by-case approach after acceleration has occurred.

A summary judgment was upheld on the issue of good faith in *Sparkman v. Peoples National Bank of Tyler*, 580 S.W.2d 868 (Tex.Civ.App.-Texarkana 1979, writ ref'd n.r.e.). That case noted that the burden of establishing the lack of good faith is upon the party against whom the power has been exercised. In the *Sparkman* case, *supra,* the party against whom the summary judgment had been granted was actually in default on several notes, had made false representations to the Bank, and had used equipment already mortgaged as collateral.

Finley does not dispute the reasons given by the Bank for deeming itself insecure, but responds that the face amount of the certificate of deposit held as collateral is the same amount as the note for which the Bank deemed itself insecure.

■ Where a security instrument authorized creditor to accelerate maturity when creditor deems himself insecure, the inse-

curity may be found as to the debt itself or as to the collateral. *Van Bibber v. Norris*, 275 Ind. 555, 419 N.E.2d 115 (1981). Certainly, the nature and value of the collateral is a major factor to be considered when the Bank accelerates on the grounds of insecurity.

The promissory note in the present case called for interest in the amount of eleven percent. The certificate of deposit accrued interest at the annual rate of nine percent. The face amount of the certificate of deposit held as collateral was the same as the principal amount of the note for which the Bank deemed itself insecure. Finley has not contended or shown by summary judgment proof that it covered the full indebtedness, which would include interest. The difference in the amounts of interest accruing on the note and the certificate of deposit would be an important element to be considered by the Bank.

■ Finley has attempted to raise the issue of good faith, on which Finley has the burden of proof, by making a general conclusion. Conclusions, even if contained in affidavits, do not have any probative value to support or oppose a summary judgment. *S.K.Y. Investment Corp. v. H.E. Butt Grocery Co.*, 440 S.W.2d 885 (Tex.Civ.App.-Corpus Christi 1969, no writ). We find that the uncontroverted sworn evidence that the debtor had threatened bankruptcy is a sufficient basis to establish the Bank's good faith.

Finley next contends that he was entitled to a summary judgment under Tex.Bus. & Com.Code Ann. § 34.02 (Vernon 1968), which reads as follows:

(a) When a right of action has accrued on a contract for the payment of money or performance of an act, a surety on the contract may require by written notice that the obligee forthwith sue on the contract. (R.S. Art. 6244.)

(b) A surety who gives notice to an obligee under Subsection (a) of this section is discharged from all liability on the contract if the obligee

(1) is not under legal disability; and either

(2) fails to sue on the contract during the first term of court after receiving the notice, or during the second term showing good cause for the delay; or

(3) fails to prosecute the suit to judgment and execution. (R.S. Art. 6245.)

This section provides that a surety on a contract for payment of money or performance of an act may demand that the assured party first pursue remedies against the principal once an action on the contract accrues. The surety is released if such an action is not brought or pursued to judgment. Finley demanded by letter that the Bank file suit against Titleshares.

■ To the extent of the hypothecator's interest in the property, the hypothecator occupies the position of surety and is entitled to all the rights and privileges of a surety. *Westbrook v. Belton National Bank*, 97 Tex. 246, 77 S.W. 942 (1904); *Planters' & Mechanics' National Bank v. Robertson*, 86 S.W. 643 (Tex.Civ.App. 1905, no writ). The property is discharged from liability by the same acts that would discharge an individual surety. *See* 53 Tex. Jur.2d *Suretyship* § 2 (1964); and Clark, *Suretyship in the Uniform Commercial Code*, 46 Texas L.Rev. 453, 471 (1968).

However, in addition to the relationship as a surety, the Bank has alleged another relationship which would make Finley an obligor in addition to being a surety. The alleged facts that would create this relationship are as follows: Finley executed a promissory note to Titleshares for $750,-000.00 and secured this note with the $750,-000.00 certificate of deposit. In turn, Titleshares executed a promissory note to the Bank and assigned the Finley note and security thereon to the Bank as collateral on that note. Inasmuch as the note and security were assignable, this placed the Bank in the same shoes as Titleshares as to their rights under the promissory note from Finley and the security (which was the certificate of deposit). However, in this posture, the Bank held the certificate of deposit as security under the terms of the Finley note. The terms of this note called for payments in five annual installments. Nothing in the record would give rise to an acceleration of the Finley note, and therefore, under this relationship, the Bank would have no right to foreclose on the collateral. Therefore, we must conclude that the Bank exercised its right to the collateral under the relationship created by the hypothecation.

The Bank contends that the case of *First National Bank of Grand Prairie v. Lone Star Life Insurance Co.*, 524 S.W.2d 525 (Tex.Civ.App.-Dallas), *writ ref'd n.r.e. per curiam*, 529 S.W.2d 67 (Tex.1975), stands with the proposition that Chapter 9 of the Texas Business and Commerce Code sets forth the exclusive means of perfecting its security interest in a certificate of deposit. However, that case does not deal with a Section 34.02 situation which, under the definition and terms set forth in Tex.Bus. & Com.Code Ann. § 34.01, et seq. (Vernon 1968), clearly would include such secured transactions.

The Bank also contends that by contracting and negotiating a specific agreement, Finley waived the provisions of the Business and Commerce Code, which are to be given controlling weight only when there is no agreement between the parties or when the agreement is so ambiguous it can speak with no authoritative voice on the transaction. *Jon-T Chemicals, Inc. v. Freeport Chemical Co.*, 704 F.2d 1412 (5th Cir.1983).

The security agreement contained the following clause:

Paragraph 8. With respect to the Obligation, and each item thereof, the Pledgor waives presentment of any instrument, demand for payment, protest and notice of nonpayment or protest or dishonor thereof.

However, the case of *Central Bank & Trust Co. v. Hill*, 160 S.W. 1099 (Tex.Civ. App.-San Antonio 1913, writ ref'd), holds that this type of language in a collateral security agreement is ineffective to waive rights of requiring a suit against the debtor when notice is given pursuant to statute.

The security agreement also contained the following clause:

Paragraph 10. Bank may pursue all its rights and remedies against the collateral at any time after default, without regard for any other security for the Obligation and whether or not it has pursued any rights and remedies it may have against the Debtor or any other person or property.

By the terms of the promissory note of Titleshares, an acceleration brought about by the Bank's becoming insecure is a type of default. Therefore, this specific provision of the collateral security agreement waived Finley's right to require the Bank to sue the debtor or be discharged from liability.

Finley also complains because the Bank filed a late response to the motion for summary judgment "without leave of court." Tex.R.Civ.P. 166-A governs summary judgment proceedings. Tex.R.Civ.P. 166-A(c) of that rule states:

Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response.

This rule leaves the filing within the seven day period within the discretion of the court, and the court is under no duty to accept a late response. However, the fact that the court expressly refused to strike the response is tantamount to granting leave to file.

The judgment of the trial court is affirmed.