United States Court of Appeals,

Fifth Circuit.

No. 91–1179.

Craig HALL, Plaintiff–Counter Defendant–Appellant,

v.

RESOLUTION TRUST CORPORATION, as receiver of Commonwealth Federal Savings Association, Defendant–Counter Plaintiff–Appellee.

April 8, 1992.

Appeal from the United States District Court for the Northern District of Texas.

Before GOLDBERG, SMITH and DUHÉ, Circuit Judges

GOLDBERG, Circuit Judge:

This case is about a $7.2 million loan. Craig Hall, the borrower, brought this action against Commonwealth Federal Savings Association, the lender (now under the receivership of the Resolution Trust Corporation), alleging that Commonwealth unreasonably refused to accept Hall's offer of a collateral substitution. Commonwealth counterclaimed, asserting its right to an acceleration of all loan payments due. On motion for summary judgment, the district court entered judgment in favor of the RTC (i.e., Commonwealth) and against Hall in the approximate amounts of $6.48 million in principal, $3 million in interest, and $100,000 in attorney's fees. On appeal, Hall contends that there existed genuine issues of material fact germane to the question of whether Commonwealth acted reasonably in calling for additional collateral and accelerating the note. We affirm.

I.

The intricacies of the loan transaction underlying this case are, beyond argument, complex but, fortunately, largely irrelevant. In 1985, Commonwealth loaned Hall $7.2 million, evidenced by a promissory note and a security agreement pledge. Commonwealth accepted common stock in Resource Savings & Loan Association as collateral for the loan, and Hall later pledged additional security in the form of his interest in certain collateral notes (the "Security Agreement"). The Security Agreement provided as follows:

> If Secured Party [Commonwealth] should at any time be *reasonably* of the opinion that the Collateral is not sufficient or has declined or may decline in value ... then Secured Party may call for additional Collateral satisfactory to Secured Party, and Debtor [Hall] promises to furnish such additional security forthwith.

It also provided that the debtor, Hall, would be in default under the agreement if "[t]he Collateral [became], in the judgment of Secured Party, unsatisfactory or insufficient in character or value."

In March 1988, the parties modified the loan agreement by a document titled the "Master Amendment to Stock Loan," which had a retroactive effective date of October 1, 1987. Among other provisions, the Master Amendment modified the Security Agreement in two critical respects: First, it provided that Commonwealth would permit Hall to substitute "for the promissory notes described in the original Collateral Assignment ... one or more debenture promissory notes (satisfactory in form to Commonwealth) held by Hall and executed by Hall Management Corporation and/or Hall Real Estate Corporation in the approximate amount of $5,000,000." In other words, Hall could substitute $5 million in debenture notes for the collateral notes he originally furnished. Second, it deleted the default provision in the Security Agreement concerning unsatisfactory or insufficient collateral: Commonwealth could no longer declare Hall in default by virtue of "[t]he Collateral [becoming], in the judgment of [Commonwealth], unsatisfactory or insufficient in character or value." Commonwealth, however, could still call for additional collateral under the terms of the original security agreement—if it became "*reasonably* of the opinion that the Collateral [was] not sufficient or ha[d] declined or [might] decline in value." Thus, the Master Amendment did not modify the collateral call provision.

By letter dated December 13, 1988, Hall offered to substitute a $6.45 million debenture note for the Collateral Notes. Although the Master Amendment only required that Hall substitute debenture promissory notes in the aggregate amount of $5 million, Hall offered $6.45 million, the principal and interest then owing on the Hall Note. But in exchange, Hall requested the return of the Resource Savings Stock. The Master Amendment made no mention of the Resource Savings stock: that is, it did not require that Commonwealth relinquish that collateral as part of a proposed

substitution. At the time of the proposed substitution, Hall was current on all of the payments due to Commonwealth.

By letter dated March 28, 1989, Commonwealth rejected Hall's proposal, indicating that the $6.45 million debenture note proffered by Hall was unsatisfactory because Commonwealth had information that the debenture was delinquent. Commonwealth also expressed concern about its collateral position in view of the declining value of the Resource Savings stock and the deteriorating financial condition of the makers of the promissory notes originally pledged by Hall under the Collateral Agreement. Accordingly, Commonwealth exercised its right under the Security Agreement to call for additional collateral. Commonwealth also indicated that there were "certain non-monetary defaults under the loan documents that require attention."

In response to Commonwealth's March 28 letter, Hall stopped making the loan payments. This lawsuit followed.

## II.

We must decide in this appeal who breached the loan agreement. The district court concluded that Hall did. The court found "that Commonwealth's exercise of its contractual right to call for additional collateral was not a breach of the written agreement between the parties" and found that "[t]he record before the court establishe[d] that RTC [was] entitled to judgment on its counterclaim on the note." Finding no genuine issues of material fact, the court entered final summary judgment in favor of the RTC and against Hall.

Hall takes the position that material issues of fact did exist on the record before the court, entitling him to a trial by jury. In particular, he observes that the collateral call provision permitted Commonwealth to demand additional collateral only if Commonwealth was "*reasonably* of the opinion that the Collateral is not sufficient or has declined or may decline in value." The matter of

reasonableness, Hall contends, is fundamentally a jury question. Hall maintains that his proposal to substitute the $6.45 million debenture note for the collateral previously tendered, which included the Resource Savings stock, was in "substantial compliance" with the Master Amendment provision concerning the substitution of collateral.

The RTC, on behalf of Commonwealth, responds that the reasonableness of the call for additional collateral was established as a matter of law based on the undisputed evidence before the district court. Moreover, the RTC argues that it was under no obligation to accept Hall's proposal for the substitution of collateral: the Master Amendment did not require that Commonwealth relinquish its hold on the Resource Savings stock, and therefore, Commonwealth was within its rights to reject Hall's proposal and Hall had no legal basis for ceasing to make the loan payments. We agree with the RTC's position.

The undisputed evidence in the record establishes that Commonwealth's decision to call for additional collateral was based on information provided to it by Hall that Resource Savings' regulatory capital had declined dramatically during the calendar year 1988, from a positive balance of some $4 million in January 1988 to a deficit balance of some $25 million in January 1989, and that Resource Savings' net income declined by more than $16 million between March 1988 and December 1988. Under Texas law, which governs this case, undisputed evidence of a significant impairment in the prospect of satisfaction of a debt establishes, as a matter of law, the reasonableness of invoking insecurity provisions under a security/loan agreement. *See Finley, Inc. v. Longview Bank & Trust Co.,* 705 S.W.2d 206, 208–09 (Tex.App.—Texarkana 1985, writ ref'd n.r.e.) (affirming summary judgment because there was no material issue of fact regarding the good faith of the bank in accelerating maturity: "We find that the uncontroverted sworn evidence that the debtor had threatened bankruptcy is a sufficient basis to establish the bank's good faith."); *Sparkman v. Peoples Nat'l Bank,* 580 S.W.2d 868, 869 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.) (affirming summary judgment in favor of bank because there were no material issues of fact regarding the bank's

good faith in accelerating the notes); *accord United States v. Grayson,* 879 F.2d 620, 623 (9th Cir.1989) ("On this record, no rational trier of fact could conclude that [the lender] lacked a good faith belief that the "prospect of payment or performance was impaired.' ") (applying federal law); *but cf. American Bank v. Waco Airmotive,* 818 S.W.2d 163, 172 (Tex.App.—Waco 1991, no writ) ("The question of whether a party acts in good faith in *accelerating maturity* because of his belief that the prospect of payment or performance was impaired ... must be resolved by the trier of fact."); *Ford Motor Credit Co. v. Powers,* 613 S.W.2d 30, 34 (Tex.Civ.App.—Corpus Christi 1981, no writ) (same). Hall's allegation that "Commonwealth's real motive was to circumvent the concessions it made in the Master Amendment, force Hall into a purported "non-monetary default,' and then demand new payment under the Hall note," does not find support in the record and, in any event, sidesteps the undisputed evidence that the collateral was impaired. The record makes clear that Commonwealth's decision to call for more collateral was objectively reasonable and consistent with the terms of the agreements, even as amended.

Hall's proposal for substitution of collateral cannot be viewed, as Hall would have it, as satisfaction of the call for *additional* collateral. Hall proposed to *substitute* the $6.45 million debenture note for the collateral then held by Commonwealth, including the Resource Savings stock. Yet under the terms of the agreement, Commonwealth did not agree to allow for the substitution of that portion of the collateral; it merely agreed to permit Hall to substitute a debenture note for the collateral notes, not the Resource Savings stock. Critically, Hall's December 1988 proposal did not offer Commonwealth the option of exchanging the $6.45 million debenture note for the collateral notes it was then holding. That the Resource Savings stock was essentially worthless at that time is irrelevant. *Cf. Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988) (under bankruptcy laws, "a retained equity interest is a property interest ... [e]ven where debts far exceed the current value of assets"). Commonwealth had the right to retain the resource Savings stock as collateral securing the payment of the note.

Hall mistakenly imputes to Commonwealth a duty, implied by the covenant of good faith and fair dealing, to have accepted Hall's proposal. In Hall's estimation, the proffered substitution of collateral would have strengthened Commonwealth's collateral position. In essence, he argues that he made a collateral substitution offer that Commonwealth could not refuse, regardless of the terms of the agreements.

Under Texas law, however, an "agreement made by the parties and embodied in the contract itself cannot be varied by an implicit covenant of good faith and fair dealing." *Exxon Corp. v. Atlantic Richfield Co.,* 678 S.W.2d 944, 947 (Tex.1984); *Adolph Coors Co. v. Rodriguez,* 780 S.W.2d 477, 482 (Tex.App.—Corpus Christi 1989, writ denied). Only in limited circumstances where there exists a "special relationship" between the parties—as between insurers and insureds, principal and agent, joint venturers, and partners—will the duty apply. *Cockrell v. Republic Mortg. Ins. Co.,* 817 S.W.2d 106, 116 (Tex.App.—Dallas 1991, no writ). Three Texas intermediate appellate courts have explicitly "refused to overlay an implied duty of good faith and fair dealing duty in the lender-borrower relationship." *Id.* at 116; *Georgetown Assoc., Ltd. v. Home Fed. Sav. and Loan Ass'n,* 795 S.W.2d 252, 255 (Tex.App.—Houston [14th Dist.] 1990, writ dism'd w.o.j.); *Victoria Bank & Trust Co. v. Brady,* 779 S.W.2d 893, 902 (Tex.App.—Corpus Christi 1989), *rev'd on other grounds,* 811 S.W.2d 931 (Tex.1991). We join them in that respect. Insofar as Hall proposed that Commonwealth accept a collateral substitute for the Resource Savings stock, Commonwealth could properly refuse to accept that proposal because it differed from the Master Amendment's substitution provision.

We are not persuaded by Hall's argument that his substitution of collateral was in "substantial compliance" with the terms of the agreement. *See Telles v. Vasconcelos,* 417 S.W.2d 491, 494 (Tex.Civ.App.—El Paso 1967, writ ref'd n.r.e.) ("[I]n all domains of the law, unless it is otherwise provided, either expressly or by necessary implication, a substantial compliance with the specified requirements [of a contract] is the legal equivalent of compliance.") (quoting *Christy v. Williams,*

292 S.W.2d 348, 352 (Tex.Civ.App.1956, err. dism'd w.o.j.). In the first place, as we have noted, his request for the return of the Resource Savings stock made his substitution proposal materially different from the substitution contemplated by the Master Amendment. Moreover, Hall cites no authority, and we are aware of none, extending the substantial compliance doctrine to the arena of loan and security agreements. As the RTC observes, the doctrine's application has been limited to compliance with an insurance policy's proof of loss requirement, *e.g., Turrill v. Life Ins. Co.,* 753 F.2d 1322, 1324 (5th Cir.1985), and to construction contracts or personal services contracts. *E.g., Measday v. Kwik–Kopy Corp.,* 713 F.2d 118, 124 (5th Cir.1983); *Telles,* 417 S.W.2d at 492.

The plain language of the Master Amendment provided that Hall could substitute $5 million dollars in debenture notes for the collateral notes. Hall did not propose such a substitution and Commonwealth was within its rights to decline the proposal. We do not believe that in the face of Hall's nonconforming collateral substitution proposal Commonwealth had a reciprocal obligation to propose the substitution contemplated by the Master Amendment. We think that it is quite plain that a party to a contract can simply reject a nonconforming proposal for modification of the contract. Nothing further is necessary.

### III.

Concluding, as we do, that Commonwealth was entitled as a matter of law to call for additional collateral, and had no obligation to accept Hall's proposed substitution for collateral, we agree with the district court and the RTC that Commonwealth did not breach the agreements. In reading the loan and security documents, we find no language exculpating Hall from his obligation to pay the stipulated periodic payments.

There being no legal basis for ceasing to make the loan payments as they became due, Hall breached the loan agreements, and thus, the district court correctly held that the RTC could accelerate the maturity of the loan.

The judgment of the district court is AFFIRMED.